**In re the MARRIAGE of Linda Lou TRESNAK and Emil James Tresnak.**

**Upon the Petition of Linda Lou TRES-NAK, Petitioner, and Concerning Emil James Tresnak, Respondent.**

No. 63997.

Supreme Court of Iowa.

Sept. 17, 1980.

Rehearing Denied Oct. 9, 1980.

William L. Shelton and Michael J. Streit of Morr & Shelton, P. C., Chariton, for appellant.

Stephen Meyer of Meyer Law Firm, Chariton, for appellee.

Catherine Pape Alexander, Diane Sue Daley and Christine M. Luzzie, Iowa City, for amicus curiae, organization of Women Law Students and Staff–University of Iowa College of Law.

Barbara J. Dougan, for amicus curiae, National Lawyers Guild–Iowa City Chapter.

David H. Vernon, N. William Hines, Barbara H. Schwartz and Christine Luzzie, Iowa City, for amicus curiae, Faculty of the University of Iowa College of Law.

Considered by REYNOLDSON, C. J., and LeGRAND, HARRIS, McCORMICK and LARSON, JJ.

McCORMICK, Justice.

This appeal involves a parental dispute over custody of two sons, Rick, age eleven, and Ryan, age nine. The parents are Emil James Tresnak (Jim) and Linda Lou Tresnak (Linda) who were married in 1965. In the August 1979 decree dissolving the marriage, the trial court awarded custody of the children to Jim. Linda appeals. We reverse and remand.

Jim was twenty–four at the time of the marriage and had three years of college. Linda was nineteen, had one year of college and had worked for one year. They resided in Dodge, Nebraska, where Jim worked with his father in the insurance business. In 1969 he sold his interest in the insurance agency and the parties sold their home. Jim returned to college and obtained his degree. In 1970 the family moved to Omaha where Jim taught in a private girls' college. In 1971 they moved to Chariton where Jim taught high school business courses, a position which he still held at the time of trial.

Linda worked in a nursing home in 1967 but otherwise was not employed outside the home during the marriage.

Jim obtained a master's degree in 1978 after three years of summer school study at Northeast Missouri State University in Kirksville.

In the fall of 1975 Linda entered junior college at Centerville. She attended summer sessions at the university in Kirksville in 1976 through 1978, while Jim was there. In addition, she attended the university full–time from January 1978 until the spring of 1979. At that time she graduated

with a B.A. degree in psychology. She planned to enter law school at the University of Iowa in the fall of that year.

The children stayed in Chariton with Jim from January through May 1978 while Linda was in school at Kirksville. The whole family was in Kirksville that summer while both parents were in school. In the fall, the children remained with Linda and enrolled in school in Kirksville for the 1978–79 school year ·while Jim returned to Chariton. The children have been in the continuous custody of Linda since then.

In awarding custody of the children to Jim, the trial court said:

> The Petitioner at this time in life now desires to continue her education by attending law school at the University of Iowa. Although this is commendable insofar as her ambition for a career is concerned, in the opinion of the Court, it is not necessarily for the best interest and welfare of her minor children, who are now ten and eight years of age. Anyone who has attained a legal education can well appreciate the time that studies consume. Although the Petitioner, during her undergraduate work, was able to care for the children while attending the Northeast Missouri University at Kirksville by studying after the children were placed in bed, the study of law is some-. what different in that it usually requires library study, where reference material is required. Also, other than time in class during the day, there will be study periods during the day in the library necessary, as well as in the evening,·and which would necessarily require the children being in the hands of a babysitter for many hours a day when not attending school. The weekends are usually occupied by study periods, and although the Petitioner has a high academic ability, she will find that by reason thereof there will be additional activities bestowed upon her, such as becoming a member of a law review, which is time—consuming. Although the Petitioner may believe that she would not have to engage in such, she by [not] doing so would be interfering

> with her own achievements for her own benefit and welfare in future years.

> The Respondent father has a stable position in the Chariton school system, president of the teachers' association, and, so far as known now, can remain in the Chariton schools for many years in the future. The Respondent's salary, though not exceptionally high, is adequate to maintain the children properly, and give them all the necessities of life. The Respondent father will be able to engage in various activities with the boys, such as athletic events, fishing, hunting, mechanical training, and other activities that boys are interested in. It would also be a benefit to the children if they were allowed to remain in the Chariton school system where they have attended school and have many friends and acquaintances. Placing custody with the Petitioner would require the children to be placed in the Iowa City school system for only a temporary time of three years, and again undoubtedly removed and placed in another system where the Petitioner would locate to practice her profession.

Linda, supported by the amicus briefs, challenges the trial court's statements concerning the demands of law school and the appropriateness of awarding custody of male children to their fathers. She asks that the custody decision be reversed.

I. *The trial court's analysis.* In challenging the trial court's reasoning, Linda contends no evidentiary support existed for the court's assumptions about law school and the children's activities. She also contends the assumed facts are not a proper subject of judicial notice.

A. *The demands of law school.* The only evidence about the demands of law school appeared in Linda's testimony. She acknowledged on cross—examination that law school would require many hours of study. However, she also said she did not expect to leave the children with babysitters often, she would take them to the library with her if necessary, and she did not believe her studies would interfere with her care of the children. Thus, while the

record supports the trial court's inference that law school studies would occupy much of Linda's time, it does not lend much support to the court's statements about the necessity of library work away from the children, the likelihood of her involvement in extracurricular activities, or the effect of such factors on her care of the children.

Nor are these matters subject to judicial notice. "To be capable of being judicially noticed a matter must be of common knowledge or capable of certain verification." *Motor Club of Iowa v. Department of Transportation*, 251 N.W.2d 510, 517 (Iowa 1977). Courts are permitted to dispense with formal proof of matters which everyone knows. *See City of Cedar Rapids v. Cox*, 252 Iowa 948, 958, 108 N.W.2d 253, 259 (1961), *appeal dismissed*, 388 U.S. 3, 82 S.Ct. 16, 7 L.Ed.2d 17. In this case, in overruling Linda's motion for new trial, the trial court defended its findings by asserting a "personal acquaintanceship with the studies of law school." However, judicial notice "'is limited to what a judge may properly know in his judicial capacity, and he is not authorized to make his personal knowledge of a fact not generally or professionally known the basis of his action.'" *Bervid v. Iowa State Tax Commission*, 247 Iowa 1333, 1339, 78 N.W.2d 812, 816 (1956). *See* J. Wigmore, 9 *Evidence* § 2569 at 540 (3d ed. 1961). It is common knowledge in the legal profession that law school studies are demanding and time–consuming, but the requirements of a specific law school curriculum are not generally or professionally known.

The trial court's statements about the necessity of extensive library study and likelihood of Linda's work on the law review at the University of Iowa law school are not matters of common knowledge or capable of certain verification within the meaning of the judicial notice principle. Because the statements have only tenuous support in the evidence, they are entitled to little weight in evaluating the merits of the custody dispute. In saying this, however, we do not suggest the court could not consider the demands of law school which were shown in the evidence.

B. *The children's preferred activities.* Linda testified that the boys enjoy fishing, reading, baking cookies, bicycling, swimming, soccer, and basketball. They do not play baseball or football. She fishes, reads, bakes cookies, bicycles and swims with them. Jim testified he swam and played soccer with the children, although he said his age and smoking limited his participation in soccer to about fifteen minutes. Linda said he refused to take the boys fishing.

This record does not support the court's statement that Jim "will be able to engage in various activities with the boys, such as athletic events, fishing, hunting, mechanical training and other activities that boys are interested in." No evidence was received that these boys were interested in hunting or mechanical training, that the enumerated pursuits are more appropriate to males, that "other activities" exist in which males have a necessary interest, or that these children will necessarily have the same interests as other males. Nor does the record contain any evidence that Jim was capable of participating in any activities with the children that Linda could not participate in with them equally well.

Apart from the lack of evidentiary support, the statement has at least two other flaws. It contains matters which are not subject to judicial notice, and it represents a stereotypical view of sexual roles which has no place in child custody adjudication.

We have emphasized that child custody cases are to be decided "upon what the evidence actually reveals in each case, not upon what someone predicts it will show in many cases." *In re Marriage of Bowen*, 219 N.W.2d 683, 688 (Iowa 1974). Each case must be decided on its own facts. *In re Marriage of Dawson*, 214 N.W.2d 131, 132 (Iowa 1974). As we said in *Bowen*, neither parent has an edge on the other based merely on sex: "The real issue is not the sex of the parent but which parent will do better in raising the children." 219 N.W.2d at 688. It logically follows that neither

parent has an edge on the other based on the sex of the children either. We reject the idea that any *a priori* notion of parental fitness should be based on the sex of parent or child.

■ The trial court was not justified in basing the award in this case in part on assumptions related to the sex of the parents and children which are not supported by the record.

■ II. *The merits of the custody award.* Our review of the record is de novo. Although we give weight to the court's findings, we are not bound by them.

Because either parent would be a good custodian of the children, the decision on the merits is difficult. Linda and Jim are stable and responsible persons who love their children and are capable of giving them adequate care.

Prior to returning to school, Linda fulfilled a traditional role as housewife and mother while Jim was the breadwinner. Until Linda moved to Kirksville in January 1978, she continued to have primary responsibility for the day–to–day parenting of the children. This was true even when she was attending junior college full–time. Although Jim had primary responsibility for the children from January through May 1978, Linda came home each weekend to clean house, help with the laundry, cook meals, and prepare foods to be served during the following week. During that period Rick required assistance at home with his spelling. After first agreeing to help, Jim later asserted he was too busy to do so. Linda provided the assistance during her weekends at home. She has had primary care of the children since the fall of 1978.

Linda is a fastidious housekeeper and obviously a highly–motivated and organized person. She has been active in school affairs. She plays with the children and has counseled with them concerning their development as adolescents.

Jim likes his work and keeps busy with it. He is not as concerned about household cleanliness as Linda. Nor did he display her concern about the children's meals and clothing during the period he had their primary care. He has not been active in their school affairs, and he was not aware of several of their allergies. Although this is explained in part by the necessity of devoting his time and energy to making a living, the record shows that even when he had primary responsibility for the care of the children, he was not as attentive as Linda to the details of their lives. Moreover, she maintained her attentiveness even during the times when her studies were demanding as much time as Jim's work.

A psychologist who interviewed the children testified in Linda's behalf. He said the children were exceptionally well–adjusted and would not suffer from moving with their mother to Iowa City. He reasoned that the stability of their relationship with their mother was more important than continuity in their place of residence. The children are normal, although Rick has had problems with spelling and underachievement at school. Linda has worked with him on these problems. The children are close, well–mannered and disciplined.

The trial court believed Linda's pursuit of a legal education would be detrimental to the children's interests. We do not think the record bears out this concern. She very capably cared for the children during her undergraduate studies. During that time Jim did not complain of her ability to do so. Moreover, the children did not suffer when, by agreement of the parties, they lived with Linda and attended the Kirksville schools in the 1978–79 school year. No question existed about their moving again. The only issue was whether they would return to Chariton or accompany Linda to Iowa City.

Furthermore, no basis exists for characterizing Linda's law school years as unstable. She has demonstrated she can control the time she spends on her studies as well as Jim can control the time he spends on his work. Although she may move again when she finishes law school, this prospect differs little from Jim's readiness to move to a junior college teaching position if an opportunity arises.

It is common knowledge that in many homes today both parents have demanding out-of-home activities, whether in employment, school or community affairs. Neither should necessarily be penalized in child custody cases for engaging in such activities. In this case, Linda seeks a legal education for self-fulfillment and as a means of achieving financial independence. These goals are not inimical to the children's best interests. Because the record shows she is capable of continuing to provide the children with the same high quality of care she has given them in the past, her attendance at law school should not disqualify her from having their custody. We perceive no reason for believing she will not give the children excellent care during her law school years and thereafter.

Applying the criteria of *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974), we believe the long-range best interests of the children will be better served if Linda has their custody. Therefore we reverse the trial court and remand to permit the court to enter appropriate orders relating to child support and visitation.

REVERSED AND REMANDED.

All Justices concur except REYNOLDSON, C. J., and LeGRAND, J., who concur in the result.