In re The MARRIAGE OF Laramie
SHORT, Appellee,

and

Carl Michael Short, Appellant.

No. 82CA0442.

Colorado Court of Appeals,
Div. II.

June 16, 1983.

Rehearing Denied July 14, 1983.

* Retired Court of Appeals Judge sitting by assignment of the Chief Justice under provisions of the *Colo.Const.,* Art. VI, Sec. 5(3), and § 24–51–607(5), C.R.S.1973 (1981 Cum.Supp.).

Charles H. Willman, P.C., Charles H. Willman, Glenwood Springs, for appellee.

The Renzo Law Offices, P.C., Anthony F. Renzo, Denver, for appellant.

SMITH, Judge.

In this dissolution of marriage action Carl Short (Father) appeals from an order of the trial court granting custody of two minor children to Laramie Short (Mother). We affirm.

The parties settled matters with regard to property division, maintenance, and attorneys' fees. The only disputed issue in this proceeding was the custody of the parties' two minor children.

In response to a motion by the Mother requesting the court "to exclude and pre-clude all evidence concerning the beliefs or the practices or any other facet of the [Mother's] Jehovah's Witness religion or any participants thereof ...," the trial court ultimately ruled it would accept inquiry only into those religious practices which might result in harm to the children of sufficient magnitude that it would require the attention of a physical or mental health professional. Father objected to this ruling.

Subsequent to the hearing, the trial court granted permanent custody of the two children to Mother. In his "Motion for New Trial or to Alter or Amend the Judgment," Father asserted three points of error, the third of which was that the trial court erred in not causing a record to be made, as required by § 14–10–126, C.R.S.1973, of an interview the court had conducted with the children.

The trial court denied the motion as to the first two issues, but granted the motion for new trial because it had failed to record its interview with the children. But, in response to the Mother's "Motion to Reconsider," the trial court modified its order granting a new trial, and ruled that the appropriate remedy for its failure to record the interview was a re-interview of the children on the record, and not a complete new trial. Father objected to this ruling.

Following the re-interview, the trial court reaffirmed its order granting Mother permanent custody. Subsequent to this ruling, Father filed no motion for new trial, or to alter or amend judgment.

### I.

On appeal, Mother contends that Father's failure to file a motion for new trial or to alter or amend judgment after the trial court's reaffirmation of its order following the re-interview precludes this court from hearing Father's appeal. We disagree.

The trial court specifically denied a new trial on the issues of admissibility of evidence and sufficiency of the evidence. The trial court also modified its order granting

a new trial because of its failure to make a record of the interview, choosing instead to re-interview the children on the record. The net effect of this was to deny Father's original motion for new trial *in toto,* which motion had been timely filed. Accordingly, the trial court *was* given an opportunity to correct the errors which Father asserts here. Hence, there was no need for him to file a second motion for new trial.

## II.

Father first contends that the trial court improperly limited or excluded certain evidence of Mother's religious practices which were relevant to the issue of the best interests of the children. We disagree.

Father relies primarily on § 14–10–124, C.R.S.1973, when he argues that the court was too restrictive in its admission of evidence of the Mother's religious practices and acts. Specifically, he directs our attention to the following parts of § 14–10–124:

"(1) The court shall determine custody in accordance with the best interests of the child. In determining the best interests of the child, the court shall consider all relevant factors, including: ..

\*    \*    \*    \*    \*    \*

(c) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;
(d) The child's adjustment to his home, school, and community; and
(e) The mental and physical health of all individuals involved ...."

Relying on the above considerations, Father argues that the trial court erred in limiting his inquiry into the Jehovah's Witness practice of disfellowship (which had been imposed upon the Father) and of how the religious practices and tenets of the Mother affect the medical care and needs of the children. Father also urges as error the exclusion of evidence of the religion's encouragement of disassociation of its members from non-members; evidence concerning the practice of door-to-door solicitation and distribution of literature; and tes-timony of an expert witness that the values and attitudes of the Mother and the Jehovah's Witness religion could have adverse psychological effects on the children.

We cannot agree with Father's argument that § 14–10–124 allows a critical examination of the religious beliefs, tenets, and practices of parents in custody proceedings. While this specific issue has not been addressed by the Colorado appellate courts, the general rule is that religious decisions and acts may be considered in a custody proceeding only to the extent that those decisions or acts will jeopardize the mental health or physical safety of the child. *Quiner v. Quiner,* 59 Cal.Rptr. 503 (Cal. App.1967); *Smith v. Smith,* 90 Ariz. 190, 367 P.2d 230 (1961); *Stone v. Stone,* 16 Wash.2d 315, 133 P.2d 526 (1943); *see Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Thus, the trial court's limitation of evidence to practices which affect the physical or mental health of the children was correct.

■ Evidence of religious practices, in order to be admissible must relate to more than just a *possibility* of future harm. We note that in a dependency determination under § 19–1–103, C.R.S.1973, the court can consider only those religious practices which actually endanger the physical or mental well-being of the child. This is because of the heavy burden upon the states to justify any infringement of an individual's First Amendment freedoms. *People in Interest of D.L.E.,* 200 Colo. 244, 614 P.2d 873 (1980) (child not neglected or dependent because parents refused any medical care for epileptic seizures). Thus, we hold that, in custody proceedings, for evidence of a religious practice to be admitted, the proponent of such evidence must establish that there is a substantial probability that such practice will result in actual harm or endangerment to the child's physical or mental health. Otherwise, such evidence may not play any part in a custody determination.

■ Here, the trial court determined that the offered evidence did not tend to establish a substantial probability of harm

and thus it was not relevant and would not be admitted. This determination of relevance is within the court's sound discretion. *Sego v. Mains*, 41 Colo.App. 1, 578 P.2d 1069 (1978). We have reviewed the record and we agree with the trial court's determination that the excluded evidence was not relevant to a determination of whether the children's physical or mental health was actually endangered by the beliefs, tenets, or practices of mother's religion. In this regard, we note that Father was granted substantial visitation rights with his children.

### III.

Father next contends that the trial court abused its discretion in granting the Mother permanent custody. We disagree.

The question of custody is within the sound discretion of the trial court and once that determination is made, the reviewing court will not substitute its judgment if there is sufficient evidence to support the decision of the trial court. *In re Marriage of Rinow*, 624 P.2d 365 (Colo. App.1981).

Here, the trial court made detailed and lengthy findings and conclusions, applying the evidence to the criteria set forth in § 14–10–124, C.R.S.1973. Our review of the evidence discloses more than sufficient evidence upon which the trial court could, and did, base its custody decision. Thus, we find no abuse of discretion.

### IV.

Finally, Father contends that a new trial is the appropriate relief for the trial court's failure to record its interview with the children. We disagree.

A trial court has wide discretion in determining whether a new trial should be granted. *Park Stations, Inc. v. Hamilton*, 38 Colo.App. 216, 554 P.2d 311 (1976). This is so because a judge's presence and observation at the trial better equip him for making this decision. *First National Bank v. Campbell*, 198 Colo. 344, 599 P.2d 915 (1979).

In one of its rulings the trial court stated that:

"The Court conducted an interview with the minor children in this action pursuant to C.R.S.1973, § 14–10–126, and no record of said proceeding was made. The interview was approximately fifteen minutes in duration and both children were present. After engaging in small talk unrelated to the case with the children, the Court found their attention span and ability to communicate on matters of substance limited. The Court did not ask either child to express a preference concerning custody. The interview played no part in the Court's ultimate decision in this action."

Thus, it appears that the trial court did not interview the children concerning their preference as provided in § 14–10–126. No interview having been conducted, the requirements of § 14–10–126, C.R.S.1973, requiring a record of such an interview was not violated. Thus, there was no error sufficient to have required a new trial.

Accordingly, judgment is affirmed.

PIERCE and TURSI, JJ., concur.