In re the MARRIAGE OF Carl Michael
SHORT, Petitioner,

and

Laramie Short, Respondent.

No. 83SC296.

Supreme Court of Colorado,
En Banc.

Jan. 14, 1985.

As Modified on Denial of Rehearing
Feb. 4, 1985.

The Renzo Law Offices, P.C., Anthony F. Renzo, Denver, Thomas J. Gillooly, Boulder, for petitioner.

Stevens & Littman, P.C., Roger E. Stevens, Denver, for respondent.

ERICKSON, Chief Justice.

We granted certiorari to review the standard of admissibility for evidence of religious beliefs or practices in a child custody proceeding. The court of appeals held that evidence of a parent's religious practices is admissible in a custody proceeding only if the proponent of such evidence establishes that there is a substantial probability that the religious practice will result in actual harm or endangerment to the child's physical or mental health. *In re Marriage of Short,* 675 P.2d 323 (Colo.App.1983). We conclude that the standard adopted by the court of appeals is unduly restrictive, and therefore reverse and remand with directions.

### I.

The marriage of Laramie Short (mother) and Carl Short (father) was dissolved in September 1980. The parties entered into a settlement agreement regarding property division, maintenance, and attorneys' fees, but disputed the custody of their two minor sons who were of the ages of two and four at the time of the hearing.

Prior to the hearing on the custody issue, the mother, an active Jehovah's Witness, filed a motion *in limine* to exclude "all evidence concerning the beliefs or the practices or any other facet of the Jehovah's Witness religion or any participants thereof." The district court initially stated that it would admit any evidence, whether religiously based or not, that bears directly on the physical or mental well-being of the children. However, the court later limited its ruling, stating that it would admit only that evidence relating to the mother's religious practices "which affects the children to the degree that would require the attention of a physician or mental health professional."

The district court accordingly permitted a limited inquiry into the mother's views regarding blood transfusions and whether she would comply with a court order requiring such a procedure to be initiated upon the children in the case of a medical emergency. The court refused, however, to admit evidence of the mother's other beliefs and practices as a Jehovah's Witness, which the father alleged were potentially harmful to the children's emotional health and welfare. The father attempted to introduce evidence, by way of offers of proof, of the mother's practices of proselytizing and door-to-door solicitation; the implications of the father's "disfellowship" from the Jehovah's Witness religion; various beliefs and practices of the mother which encourage disassociation of the children from persons who are not members of the Jehovah's Witness religion; and expert psychological testimony regarding the potential impact of such beliefs and practices on the mental and emotional development of the children.

Permanent custody of the two children was ultimately awarded to the mother, and substantial visitation rights were granted to the father. Following an unsuccessful appeal to the court of appeals, the father petitioned this court for a writ of certiorari.

### II.

The father asserts that, while under the United States and Colorado Constitutions a

court must generally remain neutral with respect to the religious tenets of the parties, such religious neutrality does not preclude the admission of evidence in a child custody proceeding of a party's religious beliefs or practices which are likely to result in physical or emotional harm to the child. We agree.

 The right of all citizens to freely pursue the religious beliefs of their choice is guaranteed by the free exercise of religion clause of the first amendment of the United States Constitution,[1] as applied to the states through the due process clause of the fourteenth amendment, and of article II, section 4 of the Colorado Constitution.[2] We have recognized that the state and the courts bear a heavy burden in justifying any infringement of an individual's first amendment freedoms. *People in the Interest of D.L.E. I*, 200 Colo. 244, 614 P.2d 873 (1980); *People in the Interest of D.L.E. II*, 645 P.2d 271 (Colo.1982); *see, e.g., Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). However, the rights guaranteed under the free exercise of religion clause are not without limits. We stated in *D.L.E. II* that

1. The first amendment of the United States Constitution provides in pertinent part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...."

2. Article II, section 4 of the Colorado Constitution provides:
 **Section 4. Religious freedom.** The free exercise and enjoyment of religious profession and worship, without discrimination, shall forever hereafter be guaranteed; and no person shall be denied any civil or political right, privilege or capacity, on account of his opinions concerning religion; but the liberty of conscience hereby secured shall not be construed to dispense with oaths or affirmations, excuse acts of licentiousness or justify practices inconsistent with the good order, peace or safety of the state. No person shall be required to attend or support any ministry or place of worship, religious sect or denomination against his consent. Nor shall any preference be given by law to any religious denomination or mode of worship.

3. Section 14-10-124, 6 C.R.S. (1984 Supp.) provides in pertinent part:
 **14-10-124. Best interests of child.** (1) The general assembly finds and declares that

the family itself is not beyond regulation in the public interest as against a claim of religious liberty, and neither the rights of religion nor rights of parenthood are beyond limitation. *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *see also Reynolds v. United States* [8 Otto 145], 98 U.S. 145, 25 L.Ed. 244 (1878). Acting to guard the general interest in the youth's well-being, the authority of the state, as *parens patriae*, is not nullified merely because a parent grounds his claim to control the child's course of conduct on religion or conscience.

645 P.2d at 275–76.

 The overriding concern in any custody proceeding must be the welfare and best interests of the child. Section 14-10-124, 6 C.R.S. (1984 Supp.);[3] *Kelley v. Kelley*, 161 Colo. 486, 423 P.2d 315 (1967). Colorado's statute governing child custody requires a broad inquiry into all relevant factors bearing on the welfare of the child, to ensure that the trial court's custody determination is most conducive to the child's best interests. *See* § 14-10-124, 6 C.R.S. (1984 Supp.).

it is in the best interest of all parties to encourage frequent and continuing contact between each parent and the minor child of the marriage after the parents have separated or dissolved their marriage. In order to effectuate this goal, the general assembly urges parents to share the rights and responsibilities of child-rearing and to encourage the love, affection, and contact between the children and the parents.

(1.5) The court shall determine custody in accordance with the best interests of the child. In determining the best interests of the child, the court shall consider all relevant factors, including:

....

(c) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(d) The child's adjustment to his home, school, and community;

(e) The mental and physical health of all individuals involved; and

(f) The ability of the custodian to encourage the sharing of love, affection, and contact between the child and the noncustodial party.

Courts are precluded by the free exercise of religion clause from weighing the comparative merits of the religious tenets of the various faiths or basing its custody decisions solely on religious considerations. *Compton v. Gilmore*, 98 Idaho 190, 560 P.2d 861 (1977); *Quiner v. Quiner*, 59 Cal.Rptr. 503 (Cal.App.1967). However, the religious beliefs and practices of the parent may be a relevant factor, along with other circumstances, which bears upon the child's best interests and general welfare. *Hilley v. Hilley*, 405 So.2d 708 (Ala.1981); *Morris v. Morris*, 271 Pa.Super. 19, 412 A.2d 139 (1979); *Sinclair v. Sinclair*, 204 Kan. 240, 461 P.2d 750 (1969); *see generally* Annot., 22 A.L.R.4th 971 (1983). Among the diverse religious faiths are philosophies and practices which might reasonably imperil the physical or mental health of a child. While courts must remain sensitive to first amendment concerns, a court in a custody proceeding must not blind itself to evidence of religious beliefs or practices of a party seeking custody which may impair or endanger the child's welfare. *See Clift v. Clift*, 346 So.2d 429 (Ala.Civ.App.1977).

The court of appeals recognized that religious decisions and acts affecting the mental health or physical safety of the child may be admitted in a custody proceeding, but only if there is a substantial probability that the religious belief or practice will result in actual harm or endangerment to the child's welfare. *Short*, 675 P.2d at 325. In our view, the standard adopted by the court of appeals is unduly restrictive and is inconsistent with the broad scope of review accorded to the trial court in child custody proceedings.

We hold that under C.R.E. 403, evidence of a party's religious beliefs or practices is relevant and admissible in a custody proceeding if it is shown that such beliefs or practices are reasonably likely to cause present or future harm to the physical or mental development of the child. *See Welker v. Welker*, 24 Wis.2d 570, 129 N.W.2d 134 (1964); *Clift*, 346 So.2d at 435; *Morris*, 412 A.2d at 144. While evidence of endangering religious beliefs or practices may not be based upon mere conjecture, the evidence need not be restricted to actual present harm or impairment. Given the necessarily uncertain nature of psychological evaluation and diagnosis and the potential for severe future psychological impairment to result from practices which do not have present demonstrable effects upon the child, we conclude that evidence of beliefs or practices which are reasonably likely to cause present or future harm to the child is admissible in a custody proceeding. *See Morris*, 412 A.2d at 146–47.

We reiterate that a court may not properly inquire into or make judgments regarding the abstract wisdom of a particular religious value or belief. Evidence of religious beliefs or practices is admissible only as it reasonably relates to potential mental or physical harm to the welfare of the child. Nor do we intend to restrict the broad discretion of the trial court in appraising the circumstances of the parties and determining which party is best suited to assume primary custody of a child. The ultimate determination of custody remains a matter largely within the sound discretion of the trial court. *Rayer v. Rayer*, 32 Colo.App. 400, 512 P.2d 637 (1973).

The judgment of the court of appeals is reversed and the case is returned to the court of appeals with directions to remand to the district court for further proceedings.

Due to the passage of time since the evidentiary hearing was held, a new hearing should be held on the issue of custody based upon the current status of the parties and in light of the standards announced in this opinion.