Upon the Petition of Michael D. DEIERLING,
Petitioner/Appellant/Cross-Appellee,
And Concerning
Carrie L. Deierling,
Respondent/Appellee/Cross-Appellant.
No. 87-200.
Court of Appeals of Iowa.
Jan. 27, 1988.

Harold J. DeLange, Davenport, for petitioner/appellant, cross-appellee.

J. Michael Metcalf, Muscatine, for respondent/appellee, cross-appellant.

Considered by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ.

OXBERGER, Chief Judge.

Michael Deierling appeals the decree dissolving the parties' marriage. He asserts the trial court should have given him physical custody of the parties' children, and alternatively, that his child support obligation is excessive. Carrie Deierling cross-appeals, and asserts the trial court granted Michael excessive summer visitation. She also requests appellate attorney fees. We affirm as modified.

The parties were married in 1978, divorced in 1980, and remarried in 1981. They have three small children: April, Levi, and Frank. Michael is a cement company laborer earning $11.66 per hour. Carrie worked prior to the birth of her first child and has not been employed since then.

In its decree the trial court ordered joint custody with Carrie having physical custody of the children. Michael was allowed regular visitation, including six weeks continuous visitation in the summer. He was ordered to pay $150 per week in child support. This amount was reduced to $75 per week during the summer visitation period.

Our review is de novo. Iowa R.App.P. 4. We give weight to the trial court's findings of fact, especially where the credibility of the witnesses is involved, but are not bound by them. Iowa R.App.P. 14(f)(7).

Michael contends the trial court erred in placing the children with Carrie. He argues he is able to provide the children with a more stable and wholesome environment, his family background is superior, and that Carrie is unstable as evidenced by her "sudden conversion" to the Jehovah's Witnesses. He also asserts the trial court considered gender in its decision.

In child custody cases the first and governing consideration is the best interest of

the child. Iowa R.App.P. 14(f)(15). We must determine which parent can administer more effectively to the long-term interests of the children. *In re Marriage of Welbes*, 327 N.W.2d 756, 758 (Iowa 1982). The factors we consider are enumerated in Iowa Code section 598.41(3) and *In re Marriage of Winter*, 223 N.W.2d 165 (Iowa 1974).

■ We see no reason to disturb the trial court's custody decision. The record shows Carrie to be a very capable mother. The social workers speak highly of her parenting abilities. She manages money very well. She also has been the children's primary caretaker since their birth.

Michael argues Carrie's family background is unwholesome and the children would encounter improper role models if left in her custody. We give little credit to this argument. There is no evidence in the record that Carrie is an immoral or unwholesome person. We are confident she will raise her children to be well-adjusted, productive members of society. Furthermore, the children during visitation periods will be able to interact with Michael's family and be introduced to different experiences and role models.

Michael also contends Carrie is unstable because of her "sudden conversion" to the Jehovah's Witnesses. The religions of the parties have been a stumbling block in this marriage. Michael is a Quaker and Carrie is a Jehovah's Witness. Michael would have this court believe that the children will be adversely affected because of Carrie's religious beliefs and practices. He claims their cultural and educational development will be hindered.

An individual has the right to choose his or her own religion, and parents together have the freedom of religious expression and practice which enters into their liberty to manage the familial relationships. See *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). Courts should not rule on the comparative merits of particular religions. *In re Marriage of Short*, 698 P.2d 1310, 1313 (Colo.1985); *Sanborn v. Sanborn*, 123 N.H. 740, 465 A.2d 888, 893

(1983); *Waites v. Waites*, 567 S.W.2d 326, 333 (Mo.1978). A parent should not be denied physical custody simply because he or she holds religious beliefs in opposition to the other parent or the American mainstream. *Short*, 698 P.2d at 1313 (member of Jehovah's Witnesses not disqualified as physical custodian); *Johnson v. Johnson*, 564 P.2d 71, 76 (Alaska 1977); *see also Gould v. Gould*, 116 Wis.2d 493, 342 N.W.2d 426, 432 (1984).

A child can benefit by being introduced to diverse religious doctrines; but ultimately, the particular religious education and training the child receives will be determined by the parents. This has been a difficult issue for Michael and Carrie. Neither is willing, particularly Michael, to fully accept the other's religious beliefs as the best for their children. Michael and Carrie will have to begin cooperating and allow the children free access to the other's religion.

We reject Michael's argument that Carrie is unstable because of her "sudden conversion." The record reveals Carrie's conversion was not sudden but, in reality, evolved over an eighteen-month period. We do not know of any reason for concluding a "sudden conversion" is evidence of instability. It would also be improper for us to label Carrie unstable because she has chosen this particular faith.

Michael also contends the trial court may have considered some gender bias in its decision on physical custody and child support. He points specifically to the following statement:

> The Court does not understand why it is regarded by the males of this world that the spending of 44 percent of the take-home pay of the petitioner for the support of three children and the babysitting services of their mother is unjust or inequitable.

This statement is disturbing. Both the Iowa Supreme Court and this court have indicated that gender bias is inappropriate in custody determinations. *See, e.g., In re Marriage of Tresnak*, 297 N.W.2d 109, 112 (Iowa 1980) (no preference based on sex); *In re Marriage of Ullerich*, 367 N.W.2d 297, 299 (Iowa App.1985).

Physical custody decisions should be made on the merits of the parental abilities of the respective parents. We conclude that is what the trial court did here. The court, after hearing all the evidence, determined that Carrie showed superior parenting abilities. We agree with this decision after our de novo review of the record.

Michael's next contention is that the child support award ordered by the trial court is excessive and relieves Carrie of her duty to support the children. He argues Carrie is capable of working outside the home and should do so in order to contribute to the support of the parties' children. Carrie responds that it would only be economically feasible for her to return to work if she could get a job that paid in excess of $5.00 per hour. She argues the babysitting costs for the three children would negate any benefits derived from full-time employment.

In Iowa both parents are under the same legal duty to support their children, although this obligation is not necessarily to be borne equally and is to be apportioned according to the reasonable ability of each parent to contribute. *In re Marriage of Heinemann*, 309 N.W.2d 151, 153 (Iowa App.1981). A party should not be relieved of this duty except under the most extenuating circumstances. *See In re Marriage of Beeh*, 214 N.W.2d 170, 174 (Iowa 1974) (mother allowed to remain in the home and raise children until youngest reached majority); *In re Marriage of Heinemann*, 309 N.W.2d 151, 153 (Iowa App. 1981) (mother awarded support so she could remain in home to raise young children).

In this case the parties have three young children. Carrie would like to stay home and raise the children until they are all in school. The record shows that, while Carrie is able to work outside the home, she is unable at this time to realistically contribute anything to the support of the children. She is capable, however, of working in the home and the court encourages her to pursue this. We are considering this fact in our child support award. We conclude the trial court's award was unduly burdensome and order Michael to pay $125 per week and $60 per week during the summer visitation period when he has physical custody of the children.

Carrie, in her cross-appeal, contends the trial court erred in granting Michael six weeks of continuous summer visitation. She claims Michael has shown little interest in the children, and, because of his work schedule, the children will spend most of the time with a babysitter. She requests the visitation period be reduced to two weeks.

In determining custody the court should include liberal visitation, where appropriate, in order to afford the children the opportunity to maximize the continuing physical and emotional contact with both parents. Iowa Code § 598.41(3) (1985); *In re Marriage of Ullerich*, 367 N.W.2d 297 (Iowa App.1985). The governing considerations, as always, are the best interests of the children.

We agree with the trial court's visitation schedule. Michael has much to offer his children. The children will soon be an age where Michael can introduce them to the activities he enjoys. The children will also benefit from the diversity of environments they will experience. A six-week visitation period maximizes the opportunity for the children and Michael to develop a close relationship.

Finally, Carrie requests appellate attorney fees. The award of attorney fees is not a matter of right but depends on the respective parties' ability to pay. *In re Marriage of Butler*, 346 N.W.2d 45, 47 (Iowa App.1984). Michael is clearly in a superior financial position and has the ability to contribute toward Carrie's fees. We order Michael to pay $900 of Carrie's attorney fees. He is also ordered to pay the costs of this appeal.

The judgment of the district court is affirmed as modified.

AFFIRMED AS MODIFIED.

SCHLEGEL, J., takes no part.