# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 18-2559

———————————————

LSP Transmission Holdings, LLC

*Plaintiff - Appellant*

v.

Katie Sieben, Commissioner, Minnesota Public Utilities Commission, each in his or her official capacity; Dan M. Lipschultz, Commissioner, Minnesota Public Utilities Commission, each in his or her official capacity; Matthew Schuerger, Commissioner, Minnesota Public Utilities Commission, each in his or her official capacity; John Tuma, Commissioner, Minnesota Public Utilities Commission, each in his or her official capacity; Valerie Means, Commissioner, Minnesota Public Utilities Commission, each in his or her official capacity; Steve Kelley, Commissioner, Minnesota Department of Commerce, each in his or her official capacity

*Defendants - Appellees*

ITC Midwest LLC; Northern States Power Company, doing business as Xcel Energy

*Intervenors below - Appellees*

-------------------------------

United States Department of Justice

*Amicus Curiae*

Iowa Department of Justice

*Amicus on Behalf of Appellant(s)*

Great River Energy; Minnesota Power; Otter Tail Power Company; Southern Minnesota Municipal Power Agency; Edison Electric Institute

*Amici on Behalf of Appellee(s)*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 16, 2019
Filed: March 25, 2020
_____

Before SMITH, Chief Judge, GRUENDER and BENTON, Circuit Judges.
_____

SMITH, Chief Judge.

LSP Transmission Holdings, LLC (LSP) filed this appeal against Minnesota's Public Utilities Commission and Department of Commerce; ITC Midwest, LLC (ITC); and Northern States Power Company doing business as Xcel Energy ("Xcel") (collectively, "Appellees"). LSP asserts that the district court[1] erred in deciding that Minnesota's right of first refusal (ROFR) provision does not violate the dormant Commerce Clause. The provision grants incumbent electric transmission owners a ROFR to construct, own, and maintain electric transmission lines that connect to their existing facilities. Minn. Stat. § 216B.246, subdiv. 2. Upon de novo review, we affirm.

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

## I. *Background*
### A. *Federal ROFR*

Pursuant to the Federal Power Act (FPA), the Federal Energy Regulatory Commission (FERC) regulates interstate transmission of electricity and the sale of electricity at wholesale in interstate commerce. *LSP Transmission Holdings*, *LLC v. Lange*, 329 F. Supp. 3d 695, 700 (D. Minn. 2018) (citing 16 U.S.C. § 824(b)(1)). States, however, retain jurisdiction over the retail sale of electricity and the generation, transmission, and distribution of electricity in intrastate commerce. *Id.* (citing 16 U.S.C. § 824(b)(1)).

FERC is also authorized to "divide the country into regional districts for the voluntary interconnection and coordination of facilities for the generation, transmission, and sale of electric energy" and to "promote and encourage such interconnection and coordination within each such district and between such districts." *Id.* (quoting 16 U.S.C. § 824a(a)). "Regionally, FERC-approved nongovernmental agencies, independent system operators ('ISO's), oversee the operation and expansion of electric transmission grids. Each ISO issues a tariff, which establishes the terms by which its members build and operate grids. These tariffs are subject to the approval of FERC." *Id.* at 700–01 (internal citations omitted).

Before issuing Order 1000, FERC allowed incumbent public utility transmission providers to exercise their federal ROFR. Under that regulatory regime, incumbents held priority status in choosing to construct new electric transmission lines in their respective service territories. *See id.* at 701 (citing *MISO Transmission Owners v. FERC*, 819 F.3d 329, 332 (7th Cir. 2016)). In 2011, "FERC issued Order 1000," which in part, "eliminated the federal ROFR." *Id.* (citing *Transmission Planning & Cost Allocation by Transmission Owning & Operating Pub. Utils.*, 136 FERC 61051, 3 ¶ 7 (2011) (hereinafter "Order 1000")). Order 1000 specifically "direct[s] public utility transmission providers to remove from their [Open Access

Transmission Tariffs] or other Commission-jurisdictional tariffs and agreements any provisions that grant a federal right of first refusal to transmission facilities that are selected in a regional transmission plan for purposes of cost allocation."Order 1000 at 3 ¶ 7.[2]

In substance, FERC's Order 1000 reformed "its electric transmission planning and cost allocation requirements for public utility transmission providers." Order 1000 at 1 ¶ 1 (citing 16 U.S.C. § 824e). "Order 1000 [is also] consistent with [FERC's] effort to manage electric grids on a regional level" but "recognize[s] that states c[an] continue to regulate electric transmission lines." *LSP Transmission*, 329 F. Supp. 3d at 701 ("We acknowledge that there is longstanding state authority [over] certain matters that are relevant to transmission planning and expansion, such as matters relevant to siting, permitting, and construction. However, nothing in . . . [Order 1000] involves an exercise of siting, permitting, and construction authority." (quoting Order 1000 at 33 ¶ 107)).

---

[2]"A 'transmission facility selected in a regional transmission plan for purposes of cost allocation' is one that has been selected, pursuant to a Commission-approved regional transmission planning process, as a more efficient or cost-effective solution to regional transmission needs." Order 1000 at 2 ¶ 5. The elimination of the federal ROFR did not apply to utilities that were not selected in a regional transmission plan for purposes of cost allocation. *See id.* at 3 ¶ 7.

> This limitation was born of . . . [FERC's] concern that a complete ban could potentially threaten grid reliability if nonincumbents failed to complete needed projects in a timely fashion. The upshot was that rights of first refusal could be retained for facilities located wholly within the service territory of an incumbent whose development costs would not be spread to other parties . . . .

*S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41, 73 (D.C. Cir. 2014).

## B. *State ROFR*

Regionally, Minnesota is governed by the FERC-approved regional transmission entity known as Midcontinent Independent System Operator (MISO). *Id.* "In accordance with Order 1000, MISO removed the federal ROFR provisions from its tariff." *Id.* Thereafter, in response to Order 1000, Minnesota, along with other states,[3] enacted a state statutory ROFR. *Id.* (citing Minn. Stat. § 216B.246, subdiv. 2). Minnesota's ROFR law provides the following:

> An incumbent electric transmission owner has the right to construct, own, and maintain an electric transmission line that has been approved for construction in a federally registered planning authority transmission plan and connects to facilities owned by that incumbent electric transmission owner. The right to construct, own, and maintain an electric transmission line that connects to facilities owned by two or more incumbent electric transmission owners belongs individually and proportionally to each incumbent electric transmission owner, unless otherwise agreed upon in writing. This section does not limit the right of any incumbent electric transmission owner to construct, own, and maintain any transmission equipment or facilities that have a capacity of less than 100 kilovolts.

Minn. Stat. § 216B.246, subdiv. 2.

After MISO removed the federal ROFR and incorporated Minnesota's ROFR into its tariff, FERC approved the tariff. *LSP Transmission*, 329 F. Supp. 3d at 702 (citing *Midwest Indep. Transmission Sys. Operator, Inc.*, 150 FERC 61037, 61176

---

[3]"In response to Order 1000, several states enacted their own ROFR laws."*LSP Transmission*, 329 F. Supp. 3d at 701 n.3 (citing N.D. Cent Code § 49-03-02.2; S.D. Codified Laws § 49-32-20; Neb. Rev. Stat. § 70-1028; 17 Okla. Stat. § 292).

¶ 25 (2015) (hereinafter "MITSO")). LSP, a transmission company based outside of Minnesota, challenged MISO's tariff. FERC, however, ruled that MISO is authorized to consider state laws in the regional transmission planning process. Based on FERC's ruling, LSP requested a rehearing. LSP argued, in part, "that FERC should preclude states from enacting ROFR laws." *Id.* (citing MITSO at 61176 ¶ 24). FERC subsequently denied LSP's request for rehearing. *Id.* (citing MITSO at 61176 ¶ 25).

### C. *Procedural History*

After FERC denied LSP's request for rehearing, LSP first filed a petition for review against FERC, which was denied by the Seventh Circuit. *See MISO Transmission Owners*, 819 F.3d at 337. LSP contended that FERC erred in allowing MISO to recognize state ROFR laws. *Id.* at 336. The Seventh Circuit ultimately held that FERC's goal—"to avoid intrusion on the traditional role of the States in regulating the siting and construction of transmission facilities"—was proper and that Order 1000 terminated the federal ROFR, not ROFR laws enacted by states. *Id.* (internal quotation omitted).

Prior to LSP filing the present lawsuit, Xcel—a Minnesota-based public utility—and ITC—a Minnesota-based transmission company—"jointly exercised their rights of first refusal under § 216B.246" to construct the Huntley-Wilmarth line. *LSP Transmission*, 329 F. Supp. 3d at 703. The line is a proposed 345 kilovolt electric transmission line that was approved by FERC and is projected to traverse Minnesota for approximately 40 miles. *Id.* It "will connect two substations—[Xcel's] existing Wilmarth substation north of Mankato, Minnesota and ITC['s] . . . Huntley substation, . . . south of Winnebago, Minnesota," which was under construction at the time LSP filed its complaint against the Appellees. *Id.* "The [line] is scheduled to be complete[d] by January 1, 2022." *Id.*

In September 2017, LSP filed the instant lawsuit against Minnesota's Public Utilities Commission and Department of Commerce, challenging the constitutionality of Minnesota's ROFR provision. LSP argued that the law violates the dormant Commerce Clause by discriminating against or placing an undue burden on interstate commerce. Eventually, Xcel and ITC intervened as defendants. Appellees then filed separate motions to dismiss LSP's complaint for failure to state a claim.

The district court granted the motions. In doing so, the court concluded that *General Motors Corp. v. Tracy*, 519 U.S. 278 (1997), forecloses LSP's arguments that Minnesota's ROFR law overtly discriminates against nonincumbent or out-of-state transmission companies. The court also determined that even if *Tracy* does not foreclose LSP's overt-discrimination arguments, its arguments still fail because Minnesota's ROFR applies equally to all incumbent electric transmission owners. Both in-state and out-of-state owners may use the ROFR and, thus, it does not discriminate for the former or against the latter.

As for LSP's contentions that Minnesota's ROFR law also places an undue burden on interstate commerce, the district court held that Minnesota's interest in regulating its own local electricity market outweighs any incidental effects on interstate commerce. After the court entered its order dismissing LSP's complaint, LSP filed this appeal.[4]

II. *Discussion*
A. *Standard of Review*

We review de novo the district court's dismissal of LSP's complaint. *U.S. ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012).

---

[4]A number of amici also filed briefing: one in support of LSP, two in support of the Appellees, and one—filed by the United States—as a neutral advisor.

"In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *Id.* And while "a complaint need not contain 'detailed factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). With that said, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

### B. *Constitutionality*

The Commerce Clause "grants Congress the power to regulate commerce between the states." *IESI AR Corp. v. Nw. Ark. Reg'l Solid Waste Mgmt. Dist.*, 433 F.3d 600, 604 (8th Cir. 2006) (citing U.S. Const. art I, § 8, cl. 3). "Implicit within the Commerce Clause is a negative or dormant feature that prevents individual states from regulating interstate commerce." *Id.* (quoting *United Waste Sys. of Iowa, Inc. v. Wilson*, 189 F.3d 762, 765 (8th Cir. 1999)). In other words, "[t]he dormant Commerce Clause keeps states from enacting 'laws that discriminate against or unduly burden interstate commerce.'" *Id.* (quoting *S.D. Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 592 (8th Cir. 2003)).

When analyzing allegations that a state or local law violates the dormant Commerce Clause, we examine the law for the presence of both overt and non-overt discrimination. *Hampton Feedlot, Inc. v. Nixon*, 249 F.3d 814, 818 (8th Cir. 2001). "First, if the law in question overtly discriminates against interstate commerce, we will strike the law unless the state or locality can demonstrate, 'under rigorous scrutiny, that it has no other means to advance a legitimate local interest.'" *Id.* (quoting *U & I Sanitation v. City of Columbus*, 205 F.3d 1063, 1067 (8th Cir. 2000)).

"The discrimination may take one of three forms. The law may be discriminatory on its face or, even if it is facially neutral, the law may have a discriminatory purpose or a discriminatory effect." *U & I Sanitation*, 205 F.3d at 1067. Under the dormant Commerce Clause, a law is discriminatory if it benefits in-state economic interests while also inordinately burdening out-of-state economic interests. *Hampton Feedlot*, 249 F.3d at 818.

"Second, even if a law does not overtly discriminate against interstate commerce, the law will be stricken if the burden it imposes upon interstate commerce is 'clearly excessive in relation to the putative local benefits.'" *Id.* (quoting *U & I Sanitation*, 205 F.3d at 1067). This is the *Pike* balancing test. *See S.D. Farm Bureau*, 340 F.3d at 593 (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970)). Essentially, "[t]hose challenging the legislative action have the burden of showing that the statute's burden on interstate commerce exceeds its local benefit." *Hampton Feedlot*, 249 F.3d at 818.

### 1. *Overt Discrimination*

As a preliminary matter, the parties extensively argue whether the Supreme Court's decision in *Tracy* forecloses LSP's arguments that the Minnesota ROFR provision overtly discriminates against nonincumbent and out-of-state transmission companies. *Tracy* held that Ohio's differential tax treatment of natural gas sales by regulated local gas utilities and unregulated producers or marketers—whether in state or out of state—did not violate the Commerce Clause. 519 U.S. at 310. In reaching its holding, the Supreme Court concluded that Ohio's favorable tax treatment of local utilities whose natural gas sales or distribution to consumers were tax-exempt did not violate the Commerce Clause because the local distribution utilities were not similarly situated to the producers or marketers. *Id.* at 287–310.

Here, the district court pointed out that "[m]any of the entities that own existing transmission facilities [in Minnesota] are regulated public utilities, who serve captive markets and have monopolies with respect to the sale of electricity to consumers." *LSP Transmission*, 329 F. Supp. 3d at 707. The court found that *Tracy*'s reasoning applies in the present case because LSP, as an unregulated transmission company, is not similarly situated to Minnesota's regulated utilities and transmission companies—"the existing transmission line owners with a right of first refusal." *Id.* at 708. The court thus concluded that the Minnesota ROFR law did not discriminate against LSP.

We do not, however, need to decide whether *Tracy* is applicable. If controlling, *Tracy* would only resolve the overt discrimination issue of the dormant Commerce Clause analysis, and the non-overt undue burden question would remain. We would have to consider the latter under the *Pike* balancing test. Therefore, accepting as true the allegation in the complaint that Minnesota-defined incumbent transmission owners and LSP are competitors, i.e., similarly situated, in the transmission expansion or development market, we address LSP's arguments using the full dormant Commerce Clause analysis.

### a. *Facial Discrimination*

"A statute 'overtly discriminates' if it is discriminatory on its face, in its purpose, or through its effects." *R & M Oil & Supply, Inc. v. Saunders*, 307 F.3d 731, 734 (8th Cir. 2002) (quoting *U & I Sanitation*, 205 F.3d at 1067). "The burden to show discrimination rests on [LSP who is] challenging the validity of" Minnesota's ROFR law. *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979). LSP asserts that the Minnesota law expressly grants a ROFR to in-state entities only and thus gives them impermissible preferential treatment "to build new MISO-approved transmission lines in Minnesota." Appellant's Br. at 25. LSP also argues that Minnesota's ROFR provision is indistinguishable from the various "flow control" laws that this court and

the Supreme Court have invalidated. *Id.* at 26–27 (citing *Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin Cty.*, 115 F.3d 1372, 1376 (8th Cir. 1997) (affirming that provisions of county ordinance "prevent[ing]the delivery of County waste to out-of-state processors are unconstitutional")).[5] And according to LSP, the district court should not have disregarded its facial-discrimination claim on the basis that some of Minnesota's incumbents with in-state operations are headquartered in other states. LSP claims, "What matters for purposes of determining whether an entity is in-state is not where it is headquartered, but whether it has a meaningful in-state presence." Appellant's Br. at 28.

LSP's facial-discrimination claim fails. The district court concluded that Minnesota's ROFR "statute draws a neutral distinction between existing electric transmission owners whose facilities will connect to a new line and all other entities, regardless of whether they are in-state or out-of-state." *LSP Transmission*, 329 F. Supp. 3d at 708. We agree.

Minnesota's ROFR law states, "An incumbent electric transmission owner has the right to construct, own, and maintain an electric transmission line that has been approved for construction in a federally registered planning authority transmission plan and connects to facilities owned by that incumbent electric transmission owner." Minn. Stat. § 216B.246, subdiv. 2. The Minnesota law further defines an "[i]ncumbent electric transmission owner" as "any public utility that owns, operates, and maintains an electric transmission line in this state; any generation and transmission cooperative electric association; any municipal power agency; any power district; any municipal utility; or any transmission company." *Id.* § 216B.246,

---

[5]LSP also cites two Supreme Court flow-control decisions, which include *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383 (1994); *Fort Gratiot Sanitary Landfill, Inc. v. Mich. Dep't of Nat. Res.*, 504 U.S. 353 (1992). These cases do not involve interests that are comparably similar to the present case.

subdiv. 1(c). Currently, incumbents in Minnesota include entities headquartered in Iowa, North Dakota, South Dakota, Wisconsin, and Minnesota. Many of these entities also own and operate facilities in states other than Minnesota.

LSP argues that the headquarters site for entities treated as Minnesota incumbents should be irrelevant to our discrimination analysis. Relying on our *Oehrleins* decision, LSP urges us to decide that these incumbents have meaningful Minnesota operations and, therefore, should be considered in-state entities who are not discriminated against by Minnesota's ROFR provision. *See* 115 F.3d at 1386–87. LSP states that the Minnesota law is per se invalid against out-of-state entities.[6]

We disagree. *Oehrleins* involved a county ordinance that required waste generated within the county to be transferred to facilities within that same county. This court rejected plaintiffs' "'market access' theory" argument, which "assume[d] that an out-of-state concern that permanently locates an operation within the state is still an 'out-of-state' entity that can complain that a law that even-handedly restricts a local market is 'discriminatory.'" *Id.* at 1386.

---

[6]For additional support, LSP also cites to *Florida Transportation Services., Inc. v. Miami-Dade County*, 703 F.3d 1230, 1259 (11th Cir. 2012) (stating that the Commerce Clause demands a focus on "where [a] company's business takes place or where its political influence lies"); and *Walgreen Co. v. Rullan*, 405 F.3d 50, 58 (1st Cir. 2005) (refusing to hold "that a favored group must be *entirely* in-state for a law to have a discriminatory effect on commerce"). These cases are distinguishable because they do not consider state regulation of certain matters relevant to transmission planning and expansion.

We further stated:

> A Delaware corporation doing business in Minnesota could not argue that it is discriminated against by Minnesota laws that apply equally to all businesses operating in the state. South Dakota companies may cho[o]se not to locate operations in Minnesota because of comparatively high state taxes that apply to all businesses, but this is not discrimination under the Commerce Clause.

*Id.* at 1386–87. "It would be a different matter, of course, if the state were to treat a company incorporated or principally located in another state differently from Minnesota companies on that basis." *Id.* at 1387 n.13. Such is not the case here. Minnesota's preference is for electric transmission owners who have existing facilities, and its law applies evenhandedly to all entities, regardless of whether they are Minnesota-based entities or based elsewhere.

In some instances, laws that restrain both intrastate and interstate commerce may be discriminatory. This is not such an instance. FERC continues to acknowledge "longstanding state authority over certain matters that are relevant to transmission planning and expansion, such as matters relevant to siting, permitting, and construction." Order 1000 at 33 ¶ 107. The building of transmission lines inheres in the processes of siting, permitting, and constructing, which are integral to transmission planning and expansion. As the Supreme Court aptly stated, "We cannot . . . accept appellants' underlying notion that the Commerce Clause protects the particular structure or methods of operation in a . . . market." *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127 (1978).

-13-

After reviewing the plain language of Minnesota's ROFR law, we hold that this law is not facially discriminatory. LSP's facial-discrimination claim fails.[7]

b. *Discriminatory Purpose*

"In determining whether a regulation has a discriminatory purpose, courts consider both direct and indirect evidence." *IESI AR Corp.*, 433 F.3d at 604.

> This includes: 1) statements by lawmakers; 2) the sequence of events preceding the [statute]'s adoption, including irregularities in the procedures; 3) the state's consistent pattern of discriminating against, or disparately impacting, a particular class of persons; 4) the [statute]'s historical background, including whether it has been historically used to discriminate; and 5) the [statute]'s use of highly ineffective means to promote the legitimate interest asserted by the state.

*Id.* LSP, based on its complaint and public documents, posits that Minnesota's ROFR provision has a discriminatory purpose. It cites the provision's legislative history. LSP points to supporters' hearing testimony and asserts that "Minnesota lawmakers openly sought to insulate incumbent transmission owners from competition introduced by Order No. 1000." Appellant's Br. at 36.

Appellees, on the other hand, contend that Minnesota's "purpose in regulating electricity is to provide consumers 'in . . . [Minnesota] with adequate and reliable services at reasonable rates.'" Intervenors-Appellees' Br. at 47 (quoting Minn. Stat. § 216B.01). They also explain that the legislative history of the Minnesota ROFR law

---

[7]Appellees correctly note that it would be somewhat awkward to label a Minnesota law as discriminatory despite benefitting a company that has an operation in Minnesota but is principally located or headquartered elsewhere. Although briefly discussed in *Oehrleins*, we have not squarely addressed the issue of whether an entity that has an in-state presence but is headquartered elsewhere is considered an in-state entity for the purpose of dormant Commerce Clause review. We need not do so now.

-14-

reveals that the Minnesota legislature previously considered alternatives to the statute but decided it was more appropriate to maintain its "longstanding, successful regulatory approach for selecting the owners and operators of transmission lines." *Id.*

Out of 16 incumbents, there are "eleven . . . headquartered in Minnesota" that also "own 16,229 miles, or 87 percent, of transmission line[s] in Minnesota." Compl. at 22, *LSP Transmission Holdings, LLC v. Swanson, et al.*, No. 0:17-cv-04490-DWF-HB (D. Minn. Sept. 29, 2017), ECF No. 1. LSP also states that the four largest owners—three of which are utilities—comprise at least "79 percent of transmission line assets in Minnesota." *Id.* at 23. This, along with the hearing testimony, reflects that Minnesota's ROFR law is not primarily aimed at protecting in-state interests but at maintaining a regulatory system that has worked and provided "adequate and reliable services at reasonable rates" to Minnesota residents. Intervenors-Appellees' Br. at 47 (quoting Minn. Stat. § 216B.01). Cost effective and reliable electricity transmission remains vital for efficient distribution to those residents.

Significantly, state police power includes regulating utilities. *Ark. Elec. Coop. Corp. v. Ark. Pub. Serv. Comm'n*, 461 U.S. 375, 377 (1983). Such state regulation inherently involves siting, permitting, and constructing transmission lines. Further, FERC has left such control to state authority and has not deemed that state ROFR laws use "highly ineffective means" to accomplish the interests of states. The Seventh Circuit agreed when it denied LSP's petition for review against FERC. On this record, we cannot conclude that Minnesota's ROFR provision has a discriminatory purpose, and we affirm the district court's dismissal of LSP's discriminatory-purpose claim.

### c. *Discriminatory Effect*

We now address whether Minnesota's ROFR law is discriminatory in its effect. "A regulation discriminates in effect if it favors in-state economic interests over

out-of-state interests." *IESI AR Corp.*, 433 F.3d at 605. LSP claims that Minnesota's ROFR provision produces disproportionate, discriminatory effects because of the 16 incumbents, 11 are Minnesota-based, and only 5 are based elsewhere. Appellees respond by arguing that "nothing in § 216B.246 imposes any greater burden on out-of-state entities trying to enter the transmission-line market than it does on Minnesota entities—they are all excluded unless they own or buy the transmission facility in Minnesota to which the new transmission line will connect." Intervenors-Appellees' Br. at 45.

As discussed above, many of the incumbents that possess the ROFR under Minnesota's law are headquartered in Minnesota. These entities control most of the transmission lines in Minnesota. Three out of the four top majority owners are utilities. LSP's argument that disproportionate ownership by incumbents shows discriminatory effects misses the point. States have traditionally regulated utilities, and FERC continues to recognize the important role states play in regulating the siting, permitting, and constructing of transmission lines as transmission needs are planned and expanded.

Minnesota's decision to allow entities other than utilities, such as independent transmission companies, to qualify as incumbents does not show an intent to favor in-state interests. If an entity does not already own an existing transmission facility in Minnesota, then it—whether a Minnesota or an out-of-state entity—faces the incidental hurdle that is placed by the Minnesota ROFR provision. If an incumbent owner chooses not to exercise its ROFR, for whatever reason, then other entities, including LSP, can seek approval and gain transmission facilities in Minnesota. Simply put, we discern no discriminatory effect.

## 2. *Undue Burden*

Because Minnesota's ROFR provision does not discriminate against out-of-state interests, we consider LSP's undue-burden claim. LSP contends that the Minnesota law violates the Commerce Clause under the *Pike* balancing test. "That test requires balancing a legitimate local public interest against its incidental burden on interstate commerce." *S. Union Co. v. Mo. Pub. Serv. Comm'n*, 289 F.3d 503, 508 (8th Cir. 2002). A law fails this balancing analysis when "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142.

LSP alleges that the state law is burdensome because it cannot compete for Minnesota's MISO-approved transmission projects. Additionally, it argues that the law has a negative aggregate effect because "if every state were to adopt a ROFR statute, the cumulative effect of such statutes would nullify Order No. 1000's abolition of federal ROFRs and eliminate competition in the market." Appellant's Br. at 53. It further adds that the Minnesota law's purported benefits are speculative.

Conversely, Appellees argue that LSP alleges insufficient facts to sustain its substantial burden for asserting a *Pike* claim. They claim that "[n]one of the cases that LSP cites in its balancing analysis address any state interest comparable to the interest in regulating utilities."[8] Intervenors-Appellees' Br. at 51. They also assert that if any federal action is warranted, Congress—not the courts—is best suited to take it.

Minnesota enacted its ROFR law, in part, in response to the uncertainty produced by FERC's Order 1000. Its goal was "to preserve the historically-proven status quo for the construction and maintenance of electric transmission lines."

---

[8] LSP cites *Pike*, 397 U.S. at 137; *Cotto Waxco Co. v. Williams*, 46 F.3d 790 (8th Cir. 1995); and *Pioneer Military Lending, Inc. v. Manning*, 2 F.3d 280 (8th Cir. 1993). Once more, the contexts and interests in the aforesaid cases are not analogous to that involved in the instant case.

Defendants-Appellees' Br. at 34. This goal is within the purview of a State's legitimate interest in regulating the intrastate transmission of electric energy. *See* 16 U.S.C. § 824(b)(1). Put differently, "unlike the regulation of natural gas, a field in which FERC has jurisdiction both over pricing and over the siting of interstate lines, the states retain authority over the location and construction of electrical transmission lines." *Ill. Commerce Comm'n v. FERC*, 721 F.3d 764, 773 (7th Cir. 2013) (internal citation omitted).

The second part of the *Pike* balancing test requires us to consider the burden imposed on interstate commerce. Minnesota's ROFR law could affect LSP's ability to build MISO-approved transmission lines in Minnesota. But from an aggregate standpoint, this record does not establish that the cumulative effect of state ROFR laws would eliminate competition in the market completely. Incumbents are not obligated to exercise their ROFRs, and some incumbents may not be obligated by their states' public utilities or service commissions to build federally-approved transmission lines. Moreover, FERC's Order 1000 did not eliminate the federal ROFR for incumbents not selected in regional transmission plans for purposes of cost allocation.

We also note that "the Supreme Court has rarely invoked *Pike* balancing to invalidate state regulation under the Commerce Clause." *S. Union Co.*, 289 F.3d at 509. Hence, we cannot say that the burden imposed by Minnesota's ROFR law is clearly excessive in relation to Minnesota's legitimate state interests in regulating its electric industry and maintaining the status quo. We, therefore, affirm the dismissal of LSP's undue-burden claim.

### III. *Conclusion*

For the foregoing reasons, we affirm the district court's dismissal of LSP's complaint.

―――――――――――――――――――――