# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-2614
_____

Paul's Industrial Garage, Inc., a Wisconsin corporation; Flom Disposal, Inc., a
Minnesota corporation

*Plaintiffs - Appellants*

Countryside Disposal, LLC, a Minnesota corporation

*Plaintiff*

v.

Goodhue County, a Minnesota county; Goodhue County Board of Commissioners,
in their official capacities; City of Red Wing, a Minnesota municipality

*Defendants - Appellees*

------------------------------

Minnesota Pollution Control Agency

*Amicus on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 15, 2022
Filed: May 27, 2022

_____

Before GRASZ, STRAS, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Proverbially, "one man's trash is another man's treasure." For Paul's Industrial Garage (PIG), a Wisconsin-based trash hauler, that idiom applies literally. PIG made around $200,000 per year collecting trash in Goodhue County, Minnesota. That ended when the County passed an ordinance requiring all garbage to be deposited at a state-owned plant in Red Wing, Minnesota (the City Plant). The garbage is then processed into refuse-derived fuel and sold to Northern States Power Company (Xcel) to be burned for electricity.

PIG and other garbage haulers and processors sued the County and Red Wing, arguing that the Ordinance violated the Commerce Clause by benefitting an in-state company (Xcel) at the expense of out-of-state haulers and processors. The district court[1] granted summary judgment to the defendants. Because PIG's claim doesn't implicate the Commerce Clause, we affirm.

I.

Before passing the disputed Ordinance, the County used private haulers and waste processing facilities, including PIG, to dispose of its garbage. PIG profited in two ways from this arrangement: (1) by charging customers to remove their waste, and (2) by charging other trash haulers a "tipping fee" to use PIG's landfill in Hager City, Wisconsin. "Tipping fees are disposal charges levied against collectors who drop off waste at a processing facility. They are called 'tipping' fees because garbage trucks literally tip their back end to dump out the carried waste." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 336 n.1 (2007). Between the tipping and collection fees, PIG made roughly $200,000 per year from the County, accounting for about 30% of its revenue.

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

-2-

In 2017 the County enacted the Ordinance, which requires haulers collecting garbage in Goodhue County to deposit it at the government-owned City Plant. The City Plant would then convert that garbage into refuse-derived fuel and sell it to Xcel.[2] PIG and other garbage haulers and processors sued, arguing that the Ordinance violates the dormant Commerce Clause in two ways. First, they argued that requiring all garbage to go to the City Plant to be converted into refuse-derived fuel unfairly discriminates against out-of-state competitors. They also claimed that even if the County is free to require all garbage to go to a *state-owned* plant, the County violated the dormant Commerce Clause by exclusively selling a byproduct of that garbage to a private, in-state company.

The district court granted summary judgment to the defendants. It reasoned that because PIG doesn't have the ability to turn refuse-derived fuel into electricity, it isn't similarly situated to Xcel and therefore can't bring a claim under the dormant Commerce Clause. The court also noted that even if PIG had the ability to convert refuse-derived fuel into energy, it would still lose under the Supreme Court's precedent in *United Haulers*. 550 U.S. at 334 ("Disposing of trash has been a traditional government activity for years, and laws that favor the government in such areas—but treat every private business, whether in-state or out-of-state, exactly the same—do not discriminate against interstate commerce for purposes of the Commerce Clause."). PIG appealed.

II.

We review the grant of summary judgment *de novo*, drawing all reasonable inferences in favor of PIG. *Richardson v. Omaha Sch. Dist.*, 957 F.3d 869, 876 (8th Cir. 2020). Summary judgment is proper when "there is no genuine dispute as to

_____

[2]"Sell" might be a misnomer because the County pays Xcel more to burn the fuel than Xcel pays to receive it. The County pays Xcel $21 per ton of refuse-derived fuel that it accepts and combusts, and Xcel pays the County $2 per ton of refuse-derived fuel delivered. So, in essence, the County pays Xcel a $19 per ton "tipping fee" to dispose of its waste.

any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)).

The Commerce Clause of the Constitution grants Congress the power to "regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. "The dormant Commerce Clause is the negative implication of the Commerce Clause: states may not enact laws that discriminate against or unduly burden interstate commerce." *S.D. Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 592 (8th Cir. 2003). "This negative aspect of the Commerce Clause prevents the States from adopting protectionist measures and thus preserves a national market for goods and services." *Sarasota Wine Mkt., LLC v. Schmitt*, 987 F.3d 1171, 1180 (8th Cir. 2021) (quoting *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S.Ct. 2449, 2459 (2019)). "Under the dormant Commerce Clause, a law is discriminatory if it benefits in-state economic interests while also inordinately burdening out-of-state economic interests." *LSP Transmission Holdings, LLC v. Sieben*, 954 F.3d 1018, 1026 (8th Cir. 2020).

But the Commerce Clause was "never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 306 (1997) (citation omitted). Accordingly, the dormant Commerce Clause doesn't prohibit differential treatment of companies that perform *different services*, because "any notion of discrimination assumes a comparison of substantially similar entities." *Id.* at 298. "Thus, in the absence of actual or prospective competition between the supposedly favored and disfavored entities in a single market there can be no local preference . . . ." *Id.* at 300. State and local governments are therefore free to treat vacation homes differently from primary residences, *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 453 (9th Cir. 2019), humane societies differently from for-profit breeders, *Park Pet Shop, Inc. v. City of Chicago*, 872 F.3d 495, 497–98 (7th Cir. 2017), and brick and mortar liquor stores differently from their online counterparts, *Cherry Hill Vineyard, LLC v. Baldacci*, 505 F.3d 28, 36–37 (1st Cir. 2007), to name a few examples.

That is the fatal flaw in PIG's dormant Commerce Clause claim.  PIG and the other appellants do not allege that they are able to convert garbage into refuse-derived fuel, nor do they allege that they have the ability to burn refuse-derived fuel to create electricity.  The defendants therefore are not competitors with either the City Plant or Xcel, and their claims must fail.

### III.

The judgment of the district court is affirmed.[3]

STRAS, Circuit Judge, concurring.

History confirms what common sense already suggests: the Commerce Clause allows Congress "to regulate Commerce . . . among the several States," but it does not prohibit states from doing so too.  *See* U.S. Const. Art. I, § 8, cl. 3.  A grant of power to one body does not withdraw it from another, *License Cases*, 46 U.S. (5 How.) 504, 583 (1847), absent an express "negative clause[]," Federalist No. 32, at 201 (Hamilton) (Clinton Rossiter ed., 1961); *see also Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 610–617 (1997) (Thomas, J., dissenting) (rejecting the "exclusivity" and "preemption-by-silence" rationales for a "negative Commerce Clause").  Today, all the court does is follow precedent, so I concur.

—————————————————

[3]Because PIG isn't a relevant comparator to Xcel or the City Plant, we do not consider whether *United Haulers* or *C & A Carbone* applies to the County's conduct. *Compare United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Management Auth.*, 550 U.S. 330 (2007) (upholding law that required haulers to bring garbage to a state-created public benefit corporation), *with C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 394–95 (1994) (holding unconstitutional a city ordinance requiring all garbage to be processed at a private waste transfer and treatment plant).