# IN THE SUPREME COURT OF IOWA

No. 14–1918

Filed March 18, 2016

**GERALD P. YOUNG, MICHAEL L. HAIGH,** and **SUZANNE M. RUNYON,**
Individually and on Behalf of Others Similarly Situated,

    Appellees,

vs.

**HEALTHPORT TECHNOLOGIES, INC.,**

    Appellant.

---

Appeal from the Iowa District Court for Polk County, Mary Pat Gunderson, Judge.

A company that fulfills records requests received by healthcare providers appeals a district court order denying its motion to dismiss. **AFFIRMED AND CASE REMANDED.**

Ryan G. Koopmans, Angel A. West, and Ryan W. Leemkuil (until withdrawal) of Nyemaster Goode, P.C., Des Moines, for appellant.

James J. Biscoglia, Ryan C. Nixon, George A. LaMarca, and Gary G. Mattson of LaMarca Law Group, P.C., Des Moines, for appellees.

Joel E. Fenton of Law Offices of Joel E. Fenton, PLC, Des Moines, and Elaine F. Gray of Fehseke & Gray Law Offices, Fort Madison, for amicus curiae Iowa Association for Justice.

**WIGGINS, Justice.**

Patients who requested medical records and billing statements from their healthcare providers filed a class action lawsuit claiming the company that fulfilled their records requests charged excessive fees in violation of Iowa Code section 622.10(6) (2013). The company moved to dismiss the petition, alleging section 622.10(6) did not apply to it because it was not a provider as defined by the statute. The district court denied the motion. We granted the company's application for interlocutory appeal. We affirm the district court and remand the case for further proceedings consistent with this opinion because the well-pleaded facts in the petition indicate the company acted as an agent of the providers by fulfilling the records requests on their behalf.

## I. Prior Proceedings.

On April 23, 2014, Gerald P. Young, Michael L. Haigh, and Suzanne M. Runyon filed a class action alleging the fees HealthPort Technologies, Inc. charged for providing copies of their medical records and billing statements exceeded statutorily imposed limits set forth in Iowa Code section 622.10(6). HealthPort filed a pre-answer motion to dismiss pursuant to Iowa Rule of Civil Procedure 1.421(1)(*f*) for failure to state a claim upon which any relief may be granted. The district court denied the motion, concluding section 622.10(6)(*a*) plainly requires fees to be based upon actual cost and does not indicate the limitations it imposes apply only to entities meeting the statutory definition of provider in section 622.10(6)(*e*)(2). Accordingly, the court concluded the class representatives might establish their entitlement to relief under the pleaded facts. HealthPort filed an application for interlocutory appeal. We granted the application.

**II. Issue.**

The only issue we must decide in this appeal is whether the district court properly denied HealthPort's motion to dismiss.

**III. Scope of Review.**

We review district court rulings on motions to dismiss for failure to state a claim upon which any relief may be granted for correction of errors at law. *Rees v. City of Shenandoah*, 682 N.W.2d 77, 78 (Iowa 2004).

**IV. Standards When Deciding a Motion to Dismiss.**

A court should grant a motion to dismiss "only if the petition on its face shows no right of recovery under any state of facts." *Tate v. Derifield*, 510 N.W.2d 885, 887 (Iowa 1994). Thus, a motion to dismiss may be properly granted "only when there exists no conceivable set of facts entitling the non-moving party to relief." *Rees*, 682 N.W.2d at 79 (quoting *Barkema v. Williams Pipeline Co.*, 666 N.W.2d 612, 614 (Iowa 2003)). When a moving party attacks a claim by filing a motion to dismiss, that party "admits well-pleaded facts and waives ambiguity or uncertainty in the petition." *Schaffer v. Frank Moyer Const., Inc.*, 563 N.W.2d 605, 607 (Iowa 1997). A court must decide the merits of a motion to dismiss based on the facts alleged in the petition, not the facts alleged by the moving party or facts that may be developed in an evidentiary hearing.[1] *Berger v. Gen. United Grp., Inc.*, 268 N.W.2d 630, 634 (Iowa 1978); *Riediger v. Marrland Dev. Corp.*, 253 N.W.2d 915, 916–17 (Iowa 1977).

---

[1]An exception to this general rule applies to facts of which a court may take judicial notice. *Riediger v. Marrland Dev. Corp.*, 253 N.W.2d 915, 916 (Iowa 1977); *see* Iowa R. Civ. P. 1.415; Iowa R. Evid. 5.201.

Under our notice-pleading standards, nearly every case will survive a motion to dismiss for failure to state a claim upon which any relief may be granted. *Smith v. Smith,* 513 N.W.2d 728, 730 (Iowa 1994). To survive a motion to dismiss, the petition need not allege the ultimate facts to support each element of a cause of action. *Id.* However, it must contain factual allegations sufficient to give the defendant fair notice of each claim asserted so the defendant can adequately respond. *Schmidt v. Wilkinson,* 340 N.W.2d 282, 283 (Iowa 1983). The allegations in a petition comply with this fair-notice requirement if the petition informs the defendant of the general nature of the claim and the incident giving rise to it. *Soike v. Evan Matthews & Co.,* 302 N.W.2d 841, 842 (Iowa 1981). In ruling on a motion to dismiss, a court construes the petition in the light most favorable to the plaintiff and resolves any doubts in the plaintiff's favor. *Turner v. Iowa State Bank & Trust Co.,* 743 N.W.2d 1, 3 (Iowa 2007)*.*

## V. Analysis.

Section 622.10(6) of the Iowa Code provides:

> At any time, upon a written request from a patient, a patient's legal representative or attorney, or an adverse party pursuant to subsection 3, any provider shall provide copies of the requested records or images to the requester within thirty days of receipt of the written request. The written request shall be accompanied by a legally sufficient patient's waiver unless the request is made by the patient or the patient's legal representative or attorney.
>
> *a.* The fee charged for the cost of producing the requested records or images shall be based upon the actual cost of production. If the written request and accompanying patient's waiver, if required, authorizes the release of all of the patient's records for the requested time period, including records relating to the patient's mental health, substance abuse, and acquired immune deficiency syndrome-related conditions, the amount charged shall not exceed the rates established by the workers' compensation commissioner for

copies of records in workers' compensation cases. If requested, the provider shall include an affidavit certifying that the records or images produced are true and accurate copies of the originals for an additional fee not to exceed ten dollars.

*b.* A patient or a patient's legal representative or a patient's attorney is entitled to one copy free of charge of the patient's complete billing statement, subject only to a charge for the actual costs of postage or delivery charges incurred in providing the statement. If requested, the provider or custodian of the record shall include an affidavit certifying the billing statements produced to be true and accurate copies of the originals for an additional fee not to exceed ten dollars.

*c.* Fees charged pursuant to this subsection are exempt from the sales tax pursuant to section 423.3, subsection 96. A provider providing the records or images may require payment in advance if an itemized statement demanding such is provided to the requesting party within fifteen days of the request. Upon a timely request for payment in advance, the time for providing the records or images shall be extended until the greater of thirty days from the date of the original request or ten days from the receipt of payment.

*d.* If a provider does not provide to the requester all records or images encompassed by the request or does not allow a patient access to all of the patient's medical records encompassed by the patient's request to examine the patient's records, the provider shall give written notice to the requester or the patient that providing the requested records or images would be a violation of the federal Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191.

*e.* As used in this subsection:

(1) "*Records*" and "*images*" include electronic media and data containing a patient's health or billing information and "*copies*" includes patient records or images provided in electronic form, regardless of the form of the originals. If consented to by the requesting party, records and images produced pursuant to this subsection may be produced on electronic media.

(2) *"Provider"* means any physician or surgeon, physician assistant, advanced registered nurse practitioner, mental health professional, hospital, nursing home, or other person, entity, facility, or organization that furnishes, bills, or is paid for health care in the normal course of business.

Iowa Code § 622.10(6).

Section 622.10(6) requires that when a patient, a patient's legal representative, or a patient's attorney properly requests a record from a provider, the provider must promptly produce the requested record. In addition, the statute limits the fees that may be charged for producing requested records. HealthPort contends section 622.10(6) does not regulate how much entities that are not providers may charge for producing records and urges us to dismiss the petition because HealthPort is not a provider as defined in section 622.10(6)(*e*)(2). The putative class representatives maintain subsections (6)(*a*) and (6)(*b*) limit fees that may be charged when any entity fulfills a record request governed by section 622.10(6). We think a reasonable person could interpret the statute either way.

The petition alleged the following facts in support of the plaintiffs' claims:

21. Plaintiffs are all residents of Polk, Marshall and Warren counties, State of Iowa. Plaintiffs, individually and/or through their legal representatives, requested medical records from various medical providers, including but not limited to Mercy Medical Des Moines.

22. Plaintiffs' requests were fulfilled by HealthPort who has entered into contractual arrangements with the medical providers from whom the records were sought.

23. In addition to the fees permitted by the Patient Records/Billings Statute, HealthPort charged and Plaintiffs paid the excess per page medical records charges, Basic Fees and Electronic Delivery Fees. Plaintiffs paid the excess per page medical records charges, Basic Fees and Electronic Delivery Fees in order to obtain the requested records

because HealthPort's policy is not to send the records until after the invoice is paid and Plaintiffs feared that refusing to pay the excess per page medical records charges, Basic Fees and Electronic Delivery Fees would delay the receipt of the needed records.

For purposes of our analysis, we treat these facts as true. Thus, in reviewing the district court's ruling on the motion to dismiss, we assume HealthPort acted as the agent of providers in fulfilling their obligations under the statute. We have found two reported cases addressing this issue.

The first is *Cotton v. Med-Cor Health Information Solutions, Inc.*, 472 S.E.2d 92 (Ga. Ct. App. 1996). Like HealthPort, the defendants in *Cotton* were companies that fulfilled records requests received by healthcare providers. The defendants moved to dismiss class-action complaints alleging they charged fees for producing patient records exceeding the statutory limits on such fees. *Id.* at 94. The defendants alleged the relevant statute governed only providers. *Id.* The court described the applicable Georgia Code sections as follows,

> The Health Records Act governs the furnishing of the record of a patient by a "provider." Under the Act, a "provider" is defined as meaning all hospitals and other specified entities providing health care services. Upon written request from the patient, the provider having custody and control of the patient's record is required to furnish a copy of that record to the patient or to any other person or provider designated by the patient. [The statute] states that the party requesting the patient's records shall be responsible to the provider for the "reasonable costs of copying and mailing the patient's record."

*Id.* at 95 (citations omitted) (quoting Ga. Code Ann. § 31-33-3(a) (1995)). The court concluded the statute applied not only to healthcare providers, but also to entities fulfilling records requests received by providers. *Id.* In arriving at its conclusion, the court emphasized the intent of the statute "was to ensure that patients have access to medical records in

the custody and control of health care providers without being charged more than the reasonable costs of copying and mailing them." *Id.* The court also noted this intent would be completely defeated if it construed the statute to allow entities hired by providers to charge more for producing records the providers were required by law to produce than the providers were permitted to charge themselves. *Id.* Finally, the court concluded agents of the providers had no greater power to charge fees in excess of those permitted by the statute than the providers themselves had. *Id.* Therefore, the court rejected the argument that the statute did not limit the fees entities producing records on behalf of the providers could charge for fulfilling records requests.[2] *Id.*

The second case we identified dealing with this issue is *Pratt v. Smart Corp.*, 968 S.W.2d 868 (Tenn. Ct. App. 1997). In *Pratt*, the plaintiff claimed Smart Corporation violated a Tennessee statute governing the production of medical records by hospitals. *Id.* at 870. The corporation moved for summary judgment, claiming the statute did not apply to an independent entity fulfilling records requests received by a hospital. *Id.* at 870, 873. The relevant statute required hospitals to furnish records to patients and patients' authorized representatives and limited the fees that could be charged when those requests were fulfilled, but it did not explicitly state that those limits applied to requests fulfilled by other entities. *Id.* Adopting the rationale of *Cotton,* the court held that although the statute referenced only hospitals and not entities like Smart Corporation, when acting as a hospital's authorized agent the corporation "could not perform acts which the hospital was forbidden by

---

[2]Ultimately, the court upheld the trial court's dismissal of the claims, but in doing so it relied on another Georgia statute codifying the voluntary-payment doctrine. *Cotton*, 472 S.E.2d at 96.

law to perform itself." *Id.* at 873. The court thus reversed the trial court's grant of summary judgment in favor of Smart Corporation. *Id.* at 873–74.

The statutes analyzed in *Cotton* and *Pratt* required healthcare providers to produce records and limited what fees could be charged when the providers produced the records. However, even though the Georgia and Tennessee statutes specifically referenced healthcare providers, the courts in *Cotton* and *Pratt* interpreted the statutes to limit the fees entities fulfilling records requests on behalf of healthcare providers could charge.

Subsections (6)(*a*) and (6)(*b*) limit what may be charged for fulfilling records requests but do not specifically reference providers. Consequently, we could conclude the legislature intended the statute to limit the fees charged by any entity fulfilling records requests received by providers. However, this case comes before us on a motion to dismiss, and the well-pleaded facts allege an agency relationship. Thus, we can decide this case without reaching that issue.

We agree with the analysis of the Georgia and Tennessee courts regarding the apparent intent of statutes like the ones considered in *Cotton* and *Pratt* and the relevancy of agency principles in the application of such statutes.[3] We therefore conclude the intent of our state legislature in enacting section 622.10(6) was to protect patients from being charged excessive fees for access to information in the custody and control of healthcare providers and ensure their timely access to such

---

[3]We have found no case addressing a similar statute in which the court held to the contrary.

information.[4]  We also conclude agency principles apply when an entity hired by a provider performs a service the statute requires a provider to perform.  Under Iowa law, an agency relationship exists when one entity has actual (express or implied) authority or apparent authority to act on behalf of another.  *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 79 (Iowa 2011).  An entity fulfilling records requests received by a provider may operate as the provider's agent by virtue of a contractual agreement requiring it to produce records in a manner that fulfills the provider's statutory obligations.  *See Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 102 (Iowa 2011) (explaining the distinction between express and implied actual authority).  On the other hand, an entity fulfilling records requests received by a provider may operate as the provider's agent by virtue of authority vested in it during the provider's communications with those requesting records.  *See Frontier Leasing*

---

[4]The legislature added subsection (6) to section 622.10 in 2008.  *See* 2008 Iowa Acts ch. 1191, § 83.  As originally introduced, the relevant bill contained an explanation stating:

> Code section 622.10 is amended as it relates to communications made in professional confidence concerning health care and health care records including patient access to the patient's medical records, provisions relating to procedures for fees charged by certain medical providers for the production of certain health care records and consulting costs, and also to provisions relating to communications between certain medical providers and attorneys in a civil action in which the condition of the plaintiff is at issue.

H.F. 2700, 82d G.A., 2d Sess., explanation (Iowa 2008).  The enacted bill remained unchanged in relevant part following its introduction.  *Compare* H.F. 2700, 82d G.A., 2d Sess. § 55 (Iowa 2008), *with* 2008 Iowa Acts ch. 1191, § 83.  Therefore, this explanation is relevant to our analysis of the legislature's intent in enacting section 622.10(6).  *See Iowa Ins. Inst. v. Core Grp. of Iowa Ass'n for Justice*, 867 N.W.2d 58, 76 (Iowa 2015) (discussing the relevance of legislative explanations); *Star Equip., Ltd. v. State*, 843 N.W.2d 446, 454 & n.3 (Iowa 2014) ("[W]e give weight to explanations attached to bills as indications of legislative intent." (quoting *Root v. Toney*, 841 N.W.2d 83, 88 (Iowa 2013))).

*Corp. v. Links Eng'g, LLC*, 781 N.W.2d 772, 776 (Iowa 2010) (explaining the concept of apparent authority).

An entity that acts as a provider's agent in fulfilling records requests covered by section 622.10(6) cannot perform acts in fulfilling those requests the provider itself could not legally perform. *See Pratt*, 968 S.W.2d at 873. In other words, an entity that fulfills records requests on behalf of a provider cannot charge more for producing the requested records than the provider itself could legally charge. *See Cotton*, 472 S.E.2d at 95. Interpreting section 622.10(6) to regulate fees charged by providers and their authorized agents is consistent with the foundational principle of the common law of agency that one "who acts through another acts by or for himself." *See Andrews v. Young Men's Christian Ass'n of Des Moines*, 226 Iowa 374, 380, 284 N.W. 186, 190 (1939). Moreover, to interpret the statute in a contrary fashion would completely devastate the object the legislature sought to achieve in enacting section 622.10(6). *See Cotton*, 472 S.E.2d at 95.

In deciding this interlocutory appeal, we are bound by the well-pleaded facts alleging HealthPort acts as the agent of providers in fulfilling records requests governed by section 622.10(6) in accordance with the providers' obligations under the statute. HealthPort admits section 622.10(6) limits what a provider can charge a patient, a patient's legal representative, or a patient's attorney for production of medical records and billing statements. HealthPort also admits section 622.10(6) indirectly binds entities fulfilling records requests received by providers such that those entities may not charge fees exceeding the fees a provider could "pass on" under the statute.

HealthPort argues that when a provider outsources medical-record production to a vendor like HealthPort, the fees the vendor charges for

producing medical records are the provider's actual costs of production. However, we need not decide precisely how the cost limitations in section 622.10(6) apply to that factual scenario to decide this appeal. Rather, when a party files a motion to dismiss, we must take all well-pleaded facts in the petition as true. If the record establishes HealthPort is not the providers' agent or the costs HealthPort charges patients are the providers' actual costs, we can consider related arguments when they become ripe for adjudication. As we have previously stated,

> We recognize the temptation is strong for a defendant to strike a vulnerable petition at the earliest opportunity. Experience has however taught us that vast judicial resources could be saved with the exercise of more professional patience. Under the foregoing rules dismissals of many of the weakest cases must be reversed on appeal. Two appeals often result where one would have sufficed had the defense moved by way of summary judgment, or even by way of defense at trial. From a defendant's standpoint, moreover, it is far from unknown for the flimsiest of cases to gain strength when its dismissal is reversed on appeal.

*Cutler v. Klass, Whicher & Mishne*, 473 N.W.2d 178, 181 (Iowa 1991).

Therefore, we hold the district court was correct in denying HealthPort's motion to dismiss the plaintiffs' petition.

**VI. Disposition.**

We affirm the order of the district court denying the motion to dismiss and remand the case to the district court for further proceedings.

**AFFIRMED AND CASE REMANDED.**