**IN THE COURT OF APPEALS OF IOWA**

No. 19-0008
Filed July 22, 2020


**IN THE MATTER OF THE ESTATE
OF FRANCIS O. GLASER, Deceased.**

_____

**JUDY E. BOWLING, Fiduciary of the Estate of FRANCIS O. GLASER and
STATE OF IOWA ex rel. DEPARTMENT OF REVENUE,**
     Appellees,

**vs.**

**SHERRI M. KINDSFATHER,**
     Appellant.
_____


     Appeal from the Iowa District Court for Jackson County, Sean McPartland,

Judge.


     Sherri Kindsfather appeals a decree setting aside certain conveyances of

real property.  **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

**WITH INSTRUCTIONS.**


     John T. Flynn of Brubaker, Flynn & Darland, P.C., Davenport, for appellant.

     Thomas J. Miller, Attorney General, and Laurie Heron McCown, Assistant

Attorney General, for appellee Department of Revenue.

     David M. Pillers, Dewitt, for appellee Judy E. Bowling.


     Heard by Vaitheswaran, P.J., and Doyle and May, JJ.

**MAY, Judge.**

Francis Glaser wanted to avoid paying his creditors. Toward that end, Glaser conveyed some property to a friend, Sherry Kindsfather. After Glaser's death, the administrator of his estate brought this action against Kindsfather. The district court ultimately voided some conveyances of property. Kindsfather appeals.

**I.      Facts and Prior Proceedings**

Glaser died on September 9, 2014. Glaser was not married and had no children. In April 2015, Judy Bowling, his first cousin, became the administrator of his estate. Various creditors filed claims. One of those creditors was the Iowa Department of Revenue (DOR). The DOR claimed it was owed over $100,000 for Glaser's income taxes. The DOR asked the administrator to file a motion to set aside certain allegedly fraudulent conveyances from Glaser to Kindsfather.

In June 2016, the administrator filed a motion asking the district court to "set aside the conveyances of the Decedent and include the Property transferred by Decedent within three (3) years of his death in the gross estate for income tax purposes." The motion defined the "Decedent" as Glaser. And the motion defined the "Property" as "three (3) quit claim deeds transferring and conveying [Glaser's] interest in certain real property" to Kindsfather. Those three quitclaim deeds were attached to the motion as "Exhibit A." They show Glaser transferred three pieces of land—which we refer to here as Lots 11, 12, and 13—to Kindsfather for the consideration of one dollar for each on November 19, 2012. Kindsfather resisted the motion and raised affirmative defenses.

Prior to trial, Kindsfather filed a motion in limine requesting the court to "restrict[] and prohibit[] all amendments to the pleadings, offers of exhibits and testimony and all offers of any proof or reference" regarding (1) a September 9, 2011 transfer of a one-half interest in a farm (the farm) from Glaser to a Judy Shreve, who is Kindsfather's mother and (2) a September 19, 2012 transfer of the farm from Shreve to Kindsfather. The district court overruled the motion in limine and stated the objections would be addressed at trial.

A bench trial was held on May 15 and 16, 2018. After the close of evidence, the administrator made an oral request for leave to amend the motion to include a claim regarding the farm transfers. Kindsfather objected. Ultimately, the district court allowed the amendment. And the district court found that, because the administrator's claim concerning the farm transfers related back to the original filing of the motion to set aside conveyances, the statute of limitations did not bar the new claim.

As to the merits, the district court found clear and convincing evidence that Glaser's conveyances of Lots 11, 12, and 13 as well as the farm were made to defraud creditors.[1] So the district court ordered those conveyances set aside and the property returned to Glaser's estate. Kindsfather appeals.

## II. Standards of Review

Because this is an equity case, our standard of review is de novo. Iowa R. App. P. 6.907. But "[w]e afford district courts considerable discretion in ruling on motions for leave to amend pleadings." *Rife v. D.T. Corner, Inc.*, 641 N.W.2d 761,

---

[1] The district court made similar findings with regard to some personal property. But these findings are not at issue in this appeal.

766 (Iowa 2002). Although, to the extent this case turns on issues involving interpretation of statutes or court rules, our review is for errors at law. *Estate of Cox by Cox v. Dunakey & Klatt, P.C.*, 893 N.W.2d 295, 302 (Iowa 2017).

### III. Issues

#### A. The Farm Transfers.

Most of Kindsfather's contentions relate to the farm transfers. And many of those arguments concern the administrator's pleadings. We focus primarily on her contentions that: (1) the administrator's original pleading—the motion to set aside conveyance and include transferred property in estate inventory (motion)—did not state a claim concerning the farm transfers; and (2) although the administrator was later allowed to add a claim regarding the farm transfers, the amendment did not relate back to the motion, and the statute of limitations bars recovery of the farm.

We begin by asking whether the motion pled a claim regarding the farm transfers. Iowa is certainly a notice pleading state. *See Rees v. City of Shenandoah*, 682 N.W.2d 77, 79 (Iowa 2004); *accord Karon v. Elliott Aviation*, 937 N.W.2d 334, 344 (Iowa 2020) (noting there is no express requirement to plead fraud with particularity). But this "does not mean all claims clear the bar." *King v. State*, 818 N.W.2d 1, 37 (Iowa 2012) (Cady, C.J., specially concurring). A pleading "must contain factual allegations that give the defendant 'fair notice' of the claim asserted so the defendant can adequately respond to the petition." *Rees*, 682 N.W.2d at 79. "A petition complies with the 'fair notice' requirement if it informs the defendant of *the incident giving rise to the claim* and of the claim's general nature." *Id.* (emphasis added); *accord Young v. HealthPort Techs., Inc.*, 877 N.W.2d 124, 128 (Iowa 2016). Said another way, a claim is sufficiently pled if the pleading

"apprise[s] the defendant of *the facts out of which the claim arose* and of the general nature of the action." *Soike v. Evan Matthews & Co.*, 302 N.W.2d 841, 842 (Iowa 1981) (emphasis added); *see Biddle v. Sartori Mem'l Hosp.*, 518 N.W.2d 795, 797 (Iowa 1994) ("Even our liberal notice pleading rules require a simple statement of the prima facie elements of a claim.").

In this case, the administrator's pleading—the motion—very clearly apprised Kindsfather of claims arising out of Glaser's "three (3) quit claim deeds transferring and conveying [Glaser's] interest" in Lots 11, 12, and 13 to Kindsfather on November 19, 2012. As to those three lots, notice pleading was met and exceeded.

As to the farm transfers, however, the situation is different. As the district court observed,

> It is clear that the [a]dministrator's original Motion to Set Aside Conveyances referred specifically to three quit claim deeds involving Lots 11, 12[,] and 13, but did not specifically address or request relief related to the conveyances of the . . . farm. Although the prayer for relief sought to set aside multiple conveyances, the farm conveyances were not specified.

We do not disagree with this description. But we would go farther. In our review of the motion, we find no mention of Glaser's September 9, 2011 transfer of the farm to Shreve. Nor do we find any mention of the September 19, 2012 transfer of the farm from Shreve to Kindsfather. In fact, the motion never mentions Shreve. Nor does it mention the farm. So we struggle to see how the motion gave notice of any claim concerning the farm transfers.

We agree with the administrator that, in hindsight, both the farm transfers and the transfers of Lots 11, 12, and 13 seem to have been part of a broader effort

to defraud creditors. But the motion did not allege a broader effort. It focused on the transfer of three properties—Lots 11, 12, and 13—which it pled with great particularly.

Still the administrator relies on the motion's prayer, which mentions a period of "three (3) years" prior to Glaser's death. Because the farm transfers occurred within three years of Glaser's death, the administrator suggests the farm transfers were properly pled.

But we do not think the motion's passing reference to a multi-year time period constitutes "fair notice" of the administrator's particular claims concerning particular transfers of a particular farm. This seems especially clear when we consider context. The motion's reference to "three (3) years" is part of this larger phrase: "the [a]dministrator prays that this [c]ourt set aside the conveyances of the Decedent and include *the Property* transferred by Decedent within three (3) years of his death in the gross estate for income tax purposes." (Emphasis added.) We emphasize "Property" because the motion defines it. In the first numbered paragraph, the motion defines "Property" as the interests that were "transfer[red] and convey[ed]" by "Francis O. Glaser ('Decedent')" to "Sherry M. Kindsfather" through "three (3) quit claim deeds" on "November 19, 2012," for stated consideration of "One $1.00 Dollar" each. So "Property" means Glaser's transfer of Lots 11, 12, and 13 to Kindsfather. By implication, "Property" excludes transfers of other interests, such as the farm; transfers to people other than Kindsfather, such as Shreve; and transfers by people other than Glaser, such as Shreve.

We also note the prayer refers only to "the conveyances *of the Decedent*" and "the Property transferred *by Decedent*." And in paragraph 1, the motion

defines "Decedent" to mean "Francis O. Glaser." So the prayer only seeks avoidance of certain conveyances "of" Glaser and transfers "by" Glaser. It does not seek avoidance of conveyances "of" Shreve or transfers "by" Shreve.

To recap, although the motion clearly described Glaser's November 19, 2012 transfer of Lots 11, 12, and 13 to Kindsfather, the motion made no mention of (1) the farm; (2) Shreve; (3) any transfer to Shreve; (4) any transfer by Shreve; (5) any transfer on September 9, 2011, when Glaser transferred the farm to Shreve; or (6) any transfer on September 19, 2012, when Shreve transferred the farm. So we cannot conclude the farm transfers were among incidents described in the motion. *See Young*, 877 N.W.2d at 128; *Soike*, 302 N.W.2d at 842. And we cannot conclude the motion informed Kindsfather of any claim relating to the farm transfers. *See Rees*, 682 N.W.2d at 79; *Soike*, 302 N.W.2d at 842. So we cannot conclude the motion gave "fair notice" of a claim concerning the farm transfers. *See Engstrom v. State*, 461 N.W.2d 309, 313 (Iowa 1990) ("We do require, however, that the petition give 'fair notice' of the claim."). And so we must conclude the motion did not properly plead a claim regarding the farm transfers. *See, e.g.*, *Fischer v. City of Sioux City*, 654 N.W.2d 544, 550 (Iowa 2002) (petitions arising from the failure of the city's drainage system during the 1999 flood could not "be construed broadly enough to encompass" claim of offensive issue preclusion based on a prior case arising from the failure of "the same drainage system" during the 1996 flood).

But the story continues. As noted, at the close of evidence, the administrator moved to amend the motion to clarify that the administrator sought to undo the farm transfers. Kindsfather resisted, noting: "It's our position that they

can't retroactively amend to add another incident. Like you're suing someone for a car accident, and you get to court and say, [']oh, by the way, you [also] hit me a year ago. I want to add that to this claim.['] It's another incident."

Ultimately, the district court allowed the amendment. The district court found that, well in advance of trial, Kindsfather was aware of the administrator's concerns about the farm transfers. Among other things, the court found "Kindsfather was questioned in detail about the conveyances of the farm in her deposition given March 30, 2017, over one year prior to trial."

We decline to find the court abused its broad discretion by allowing the amendment. *See Rife*, 641 N.W.2d at 766. Even so, there is still a statute of limitations issue. The motion to amend was made on May 16, 2018. The statute of limitations for actions to set aside transfers is five years. *See* Iowa Code § 614.1(4) (2016); *see also id.* § 684.9(1). So, Kindsfather argues, the amendment was too late to add a claim regarding Shreve's transfer of the farm to Kindsfather on September 19, 2012, much less Glaser's transfer of the farm to Shreve on September 9, 2011. But the administrator contends the amendment relates back to the original motion.

Well-established principles help us untangle these competing arguments. Our "[s]tatutes of limitations establish a reasonable period of time for plaintiffs to file their claims." *Estate of Kuhns v. Marco*, 620 N.W.2d 488, 491 (Iowa 2000). "This limitation period essentially exists to ensure a defendant will receive timely notice of a potential claim so that the defendant will be protected from the multitude of problems that can occur when defending stale claims." *Id.* Some of those "problems include diminished memories of witnesses, disappearance of

witnesses, and lost evidence." *Id.* "Thus, an amendment that adds new parties or claims after the period of limitations has expired can offend the policies underlying the statute of limitations because the ability to conduct a defense on the merits can be undermined by the late notice of the need to prepare a defense." *Id.* So, "although amendments should be freely granted to promote a trial on the merits, an amendment must not relate back to the date of the original pleading if it would offend the policies underlying the statute of limitations." *Id.*

"Our rules of civil procedure consider the competing interests that can clash when pleadings are amended after the statute of limitations has expired." *Id.* "To balance these interests," Iowa Rule of Civil Procedure 1.402(5)[2] "applies two separate tests to determine if an amendment to a pleading will relate back." *Id.* One of those tests, which applies only to amendments that add parties, is not relevant here. *See id.* The other test is relevant because it "applies to amendments that add claims." *Id.* Under this test,

> [i]f a pleading is amended to add a claim, the amendment will be deemed to relate back to the date of the original pleading when the claim in the amendment "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . ."

*Id.* (quoting rule 69(e), now renumbered as rule 1.402(5)).

In this case, the "original pleading" is the administrator's motion. The "conduct, transaction, or occurrence" described in the motion was Glaser's transfer of Lots 11, 12, and 13 to Kindsfather on November 19, 2012. That transaction occurred after—and was not the same as—Glaser's transfer of the farm to Shreve

---

[2] Formerly Iowa Rule of Civil Procedure 69(e).

in September 2011 and Shreve's transfer of the farm to Kindsfather in September 2012. *See Willson v. City of Des Moines*, 386 N.W.2d 76, 84 (Iowa 1986) (noting a plaintiff's "amended petition significantly expanded the scope of the litigation" because its new claim arose from "a separate incident" that occurred "*after*" the events alleged in the original pleading). So we cannot say the farm claims "ar[i]se out of the conduct, transaction, or occurrence set forth or attempted to be set forth in" the motion. Iowa R. Civ. P. 1.402(5). And so we cannot conclude the amendment relates back to the motion. *See id.* Instead, we must conclude the farm claims were barred by the statute of limitations. *See* Iowa Code § 614.1(4); *cf. Grant v. Cedar Falls Oil Co.*, 480 N.W.2d 863, 864, 866 (Iowa 1992) (affirming the district court's ruling that the amendment did not relate back and the claim was barred by statute of limitations). So we reverse the district court's award concerning the farm.[3]

**B. The Clean Hands Doctrine.**

Kindsfather argues that, because the district court found Glaser fraudulently transferred Lots 11, 12, and 13, the clean hands doctrine bars the administrator from recovering those properties. We disagree.

Under the clean hands doctrine, a party who "comes into equity for relief . . . must show that his or her conduct has been fair, equitable, and honest as to the particular controversy in issue." *Opperman v. M. & I. Dehy, Inc.*, 644 N.W.2d 1, 6 (Iowa 2002) (quoting 27A Am. Jur. 2d *Equity* § 126, at 605 (1996)).

---

[3] Because we reverse on these grounds, we need not resolve Glaser's other contentions regarding the farm, including her argument that Shreve was an indispensable party and her argument that "unclean hands" by Glaser barred the administrator's recovery of the farm notwithstanding Iowa Code section 633.368.

"A complainant will not be permitted to take advantage of his or her own wrong or claim the benefit of his or her own fraud or that of his or her privies." *Id.* (quoting 27A Am. Jur. 2d *Equity* § 126, at 605 (1996)).

So, of course, the clean-hands doctrine would prohibit Glaser from recovering properties he fraudulently conveyed. Likewise, Kindsfather argues the doctrine prevents recovery by Glaser's administrator, who stands in Glaser's shoes. *See id.* (noting "[c]ourts have generally applied the [clean-hands] maxim in situations where there has been a conveyance to hinder, delay, or defraud creditors" and collecting cases).

As the administrator notes, however, in 1963, our legislature enacted Iowa Code section 633.368. It provides that "[t]he property liable for the payment of debts and charges against a decedent's estate shall include all property transferred by the decedent with intent to defraud the decedent's creditors or any of them." Iowa Code § 633.368. It further provides that "the right to recover such property, so far as necessary for the payment of the debts and charges against the estate of the decedent, shall be exclusively in the personal representative, who shall take such steps as may be necessary to recover the same." *Id.*

Familiar principles guide our understanding of statutes like section 633.368. Under Iowa's constitution, "[t]he right to legislate is in the legislature and not in us." *Ctr. Twp. Sch. Dist. by Rollins v. Oakland Indep. Sch. Dist.*, 112 N.W.2d 665, 671 (Iowa 1962); *see* Iowa Const. art. III, Legislative Department, § 1 (power of general assembly). *But see* Iowa Const. art. III, § 16 (executive approval). And we are "constitutionally prohibited" from usurping the legislative role. *Hansen v. Haugh*, 149 N.W.2d 169, 241 (Iowa 1967) (citing Iowa Const. art. III, Of the Distribution of

Powers, § 1). Instead, when the words of a statute address an issue before the court, "[i]t is our duty to accept" the statute as enacted and to apply it "as it is written." *Fishel v. Redenbaugh*, 939 N.W.2d 660, 663 (Iowa Ct. App. 2019) (citations omitted). This is true even if the statute is in derogation of a common law rule, such as the clean-hands doctrine. *See* Iowa Code § 4.2; *see also State v. Bibler*, No. 19-0314, 2020 WL 2987995, at *3–4 (Iowa Ct. App. June 3, 2020) (determining that statutory law usurps common law rules).

Through the enactment of section 633.368, the legislature gave the administrator "the right to recover" any "property transferred" by Glaser "with intent to defraud the decedent's creditors or any of them." We must give effect to this clear statutory command. To whatever extent the clean-hands doctrine might support a different result, the doctrine must yield. *See Clark v. Thompson*, 37 Iowa 536, 540 (1873) ("It is not within the jurisdiction of equity to set aside statutes, and we have never heard that it has power to relieve, in any way, the severities of express legislative enactments.").

### C. Homestead Exemption.

As to Lots 11, 12, and 13, Kindsfather also argues the district court failed to apply the homestead exemption under Iowa Code section 561.16. But Kindsfather does not dispute the district court's ruling that "[t]here can be no homestead right without ownership of the homestead property, and there is no intent that a homestead interest can be created or maintained with wrongfully appropriated property." *See Cox v. Waudby*, 433 N.W.2d 716, 719 (Iowa 1988) (concluding "the legislature never contemplated or intended that a homestead interest could be created or maintained with wrongfully appropriated property"; finding no

homestead interest was acquired when the purchaser used illegal funds to purchase the property). And following our de novo review of the ample evidentiary record, we adopt the district court's conclusion that Kindsfather was complicit in Glaser's effort to defraud creditors through the transfer of Lots 11, 12, and 13. So Kindsfather's homestead argument cannot prevail.

## D. Excessive Relief.

Finally, Kindsfather contends the district court erred in voiding all of Glaser's conveyances instead of ordering just enough relief to satisfy the DOR liens. Kindsfather contends that Iowa Code section 684.7 only allows the administrator to seek relief up to "the amount necessary to satisfy" the DOR's claim. We disagree. *See* Iowa Code § 684.8(2)(a) (limiting a creditor's recovery "under section 684.7" to "the amount necessary to satisfy the creditor's claim"). Section 684.7 only governs the remedies available to "a creditor," not the administrator of an estate. And as discussed above, Iowa Code section 633.368 specifically authorizes an administrator to recover property that was fraudulently conveyed, and "[s]uch property shall constitute general assets for the payment of all creditors." So section 684.7 does not limit the administrator's recovery.

## IV. Conclusion

We reverse the district court's order insofar as it grants relief concerning the farm. We remand for entry of a corrected order. In all other regards, we affirm.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**