# THE COURT OF APPEALS OF IOWA

No. 21-0696
Filed July 8, 2022

**LS POWER MIDCONTINENT, LLC and SOUTHWEST TRANSMISSION, LLC,**
     Plaintiffs-Appellants,

**vs.**

**STATE OF IOWA, IOWA UTILITIES BOARD, GERI D. HUSER, GLEN DICKINSON, and LESLIE HICKEY,**
     Defendants-Appellees,

**and**

**MIDAMERICAN ENERGY COMPANY and ITC MIDWEST LLC,**
     Intervenors.
_____

        Appeal from the Iowa District Court for Polk County, Celene Gogerty, Judge.


        Energy companies appeal the dismissal of their case for lack of standing and request injunctive relief at this appellate stage. **AFFIRMED.**


        Charles F. Becker, Michael R. Reck, and Erika L. Bauer of Belin McCormick, P.C., Des Moines, for appellants.

        Thomas J. Miller, Attorney General, and David M. Ranscht and Benjamin Flickinger, Assistant Attorneys General, for appellees.

        Elizabeth R. Meyer, Stanley J. Thompson (until withdrawal), and Tara Z. Hall of Dentons Davis Brown, P.C., Des Moines, for intervenors MidAmerican Energy Company.

Amy Monopoli of ITC Holdings Corp. (until withdrawal), Des Moines, and Bret A. Dublinske and Lisa M. Agrimonti of Fredrickson & Byron, P.A., Des Moines, for intervenors ITC Midwest LLC.

Kelly A. Cwiertny and Terri C. Davis of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for amicus curiae Resale Power Group of Iowa.

Lynn C. Herndon of Nyemaster Goode, P.C., Des Moines, and Kenneth R. Stark, Harrisburg, Pennsylvania, for amicus curiae Coalition of MISO Transmission Customers.

Heard by May, P.J., and Greer and Chicchelly, JJ.

**GREER, Judge.**

In June 2020, the Iowa legislature passed H.F. 2643, an omnibus appropriations bill, codified in Iowa Code section 478.16 (2020), effective July 1, 2020. One of the results of this was the reinstitution of a right of first refusal (ROFR) for incumbent electric transmission owners. At its core, this ROFR gave energy companies with existing energy infrastructure the ability to have the first shot at new projects scheduled within the territory they already occupy. Missouri-based energy companies LS Power Midcontinent, LLC and Southwest Transmission, LLC—together a part of LS Power Group (LSP)[1]—filed suit against the State, arguing the ROFR violated the Iowa constitution and seeking injunctive relief to prevent the publication or enforcement of the new law. The State moved to dismiss, arguing LSP did not have standing to bring suit because they had suffered no injury in fact. The district court agreed and dismissed the case. Because LSP has not shown they have been injured by the enactment of the law, we affirm the district court's decision. In the interim, LSP also moved to enjoin any bidding on projects during this appellate process; with this decision we deny that request.

**I. Background Facts and Proceedings.**

The energy that powers everyday life in Iowa makes its way into communities through a highly regulated planning system. Companies can be involved in that system by generating, transmitting, or distributing power. Two non-governmental entities known as Regional Transmission Organizations (RTOs)—

---

[1] We refer to the plaintiffs collectively as LSP in this decision. LSP develops, constructs, and manages wholesale electric transmission projects.

the Southwest Power Pool (SPP) and Midcontinent Independent System Operator (MISO)—oversee the transmission stage by planning any necessary expansion of interstate, high-voltage transmission grids in the state.[2]  As RTOs, SPP and MISO are regulated by the Federal Energy Regulatory Commission (FERC).  Companies must be qualified members of MISO or SPP to bid on that RTO's planned projects.  Once MISO or SPP determine that a member company has won the bid for the Iowa project, the Iowa Utilities Board (IUB) then facilitates and oversees the project's specifics, such as the route and land use.

In June 2020, the Iowa legislature passed H.F. 2643, titled "FY 2021 Appropriations Bill."  The bill's Division XXXIII, Section 128, was titled "Electric Transmission Lines."[3]  This specific portion of H.F. 2643 gave the owners of current electric transmission infrastructure that would connect to any new project necessary in the state the ROFR for that new project unless the project was already subject to a federal-level ROFR.  In other words, rather than MISO or SPP fielding bids from all interested member companies, the RTOs follow the state regulation and a member with existing infrastructure in the territory gets the first crack at taking on the new development.  The incumbent then has ninety days to decide whether it wants the project; if it declines, the IUB can determine whether another company can take on the project.  Iowa Code § 478.16(3).

---

[2] These RTOs operate across multiple states.

[3] This section was not present in H.F. 2643 when it was passed by the Iowa House of Representatives.  Rather, it was added in the Iowa Senate by amendment S-5163 in the early morning hours of June 14, 2020.  The amended bill was then passed by the House later that day.

ROFRs have been a part of the landscape for projects like this—before 2011, MISO and SPP each had a federal ROFR in their own tariffs. But, in 2011, FERC issued Order Number 1000, which directed RTOs to remove federal-level ROFRs from tariffs to allow for a more competitive bidding process. Transmission Planning & Operating Public Utilities, Order No. 1000, 76 Fed. Reg. 49,842, 49,855 (2011). This move toward elimination applied only to projects "selected in a regional transmission plan for purposes of cost allocation."[4] *Id.* at 49,846. But Order Number 1000 left the door open for state-level ROFRs.[5] Both MISO and SPP adjusted their tariffs accordingly to remove the relevant portions of their federal ROFR.

The two Missouri-based companies here went through the process to become qualified members of an RTO—LS Power is qualified through MISO and Southwest Transmission is qualified through SPP. But neither have existing infrastructure in Iowa.

After H.F. 2643 was signed by Governor Kim Reynolds, LSP petitioned for declaratory and injunctive relief, citing several constitutional shortcomings. The complaint named the State of Iowa, the IUB, IUB Chair Geri Huser, Director of the Legislative Services Agency Glen Dickinson, and Iowa Code Editor Leslie Hickey as defendants. It specifically asserted H.F. 2643 violated article III, section 29 of

---

[4] Iowa Code section 478.16(3), then, fills the gap Order Number 1000 created.

[5] The order states explicitly: "[W]e note that nothing in this Final Rule is intended to limit, preempt, or otherwise affect state or local laws or regulations with respect to construction of transmission facilities, including but not limited to authority over siting or permitting of transmission facilities." Transmission Planning & Operating Public Utilities, 76 Fed. Reg. at 49,880.

the Iowa Constitution[6] and both the equal protection and privileges and immunities clauses found in article I, section 6. The defendants moved to dismiss the action, arguing LSP lacked standing; brought unripe and untimely claims; named unnecessary parties in Huser, Dickinson, and Hickey; and should fail on the merits. The day after the motion was filed, MidAmerican Energy Company and ITC Midwest, LLC applied as intervenors under Iowa Rule of Civil Procedure 1.407(1)(b) and joined the motion to dismiss; both petitions to intervene were ultimately granted, and MidAmerican and ITC both filed resistances to the request for a temporary injunction.

The district court heard arguments on both the motion to dismiss and the temporary injunction in January 2021. In response to the standing challenge, LSP argued it was injured as a non-incumbent transmission line company subject to the new ROFR and because they could not participate in the legislative process or garner public opposition. In March, a written order granted the motion to dismiss and denied the temporary injunction because LSP did not have standing to bring any of its claims. LSP filed a motion for reconsideration, enlargement, or modification, as well as a motion to amend their petition. The court denied the motion to reconsider and held that, as the petition had been dismissed, the motion to amend it was denied. LSP timely appealed.

---

[6] LSP alleges H.F. 2643 violates both the "single-subject clause," which states: "Every act shall embrace but one subject, and matters properly connected therewith," and the "title clause," which states that if any subject "embraced in an Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be expressed in the title." Iowa Const. art. III, § 29.

After the appeal was filed, but before our court heard oral argument on the case, LSP filed a motion for temporary injunction, informing the court MISO is scheduled to approve a new slate of projects on July 25, 2022; LSP asks us to enjoin the application of section 478.16(3) to these projects' processes. We allowed additional time at oral argument for the appellants, appellee, and appellee-intervenors to present arguments about the injunction.

**II. Analysis.**

We review a district court's dismissal of a case based on standing for correction of errors at law. *Hawkeye Foodservice Distrib., Inc. v. Iowa Educators Corp.*, 812 N.W.2d 600, 604 (Iowa 2012). "A court should grant a motion to dismiss 'only if the petition on its face shows no right of recovery under any state of facts.'" *Young v. HealthPort Techs., Inc.*, 877 N.W.2d 124, 127 (Iowa 2016) (citation omitted). But, courts "must decide the merits of a motion to dismiss based on the facts alleged in the petition, not the facts alleged by the moving party or facts that may be developed in an evidentiary hearing."[7] *Id.* We take the facts in the light most favorable to the plaintiff. *Id.* at 128.

While both the technical and regulatory mechanisms affected by this case are complicated, at this stage, this case hinges on a purely legal, base-level inquiry—does LSP have standing to bring this claim? Before reaching that determination, we must first decide whether we can take judicial notice of developments in the energy sphere since this case's inception.

---

[7] *Young* recognizes an exception for facts that can be judicially noticed. 877 N.W.2d at 127 n.1.

*a. Judicial Notice.*

LSP asks us to take judicial notice that, as of September 2021, MISO stated it could release a batch of recommended projects as early as March 2022. *See* Iowa R. Evid. 5.201(b)(2) (allowing a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . [c]an be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). March 2022 has gone and passed, but LSP informed the court that projects were recommended in May 2022; these recommendations have not yet been approved and are not slated for approval until July 2022.[8] The State argues we should not take judicial notice of these facts on appeal because they are from a private organization rather than a government record, court record, or generally known fact.

Courts can take judicial notice of adjudicative facts on appeal. *See* Iowa R. Evid. 5.201(a), (d); *State v. Washington*, 832 N.W.2d 650, 655 (Iowa 2013) ("Judicial notice may be taken on appeal."); *In re Marriage of Tresnak*, 297 N.W.2d 109, 112 (Iowa 1980) ("Courts are permitted to dispense with formal proof of matters which everyone knows."). "An adjudicative fact is '[a] controlling or operative fact, rather than a background fact; a fact that concerns the parties to a judicial or administrative proceeding and that helps the court or agency determine how the law applies to those parties.'" *Rhoades v. State*, 848 N.W.2d 22, 32 (Iowa 2014) (alteration in original) (quoting *Judicial Notice*, *Black's Law Dictionary* (9th

---

[8] The court "[m]ay take judicial notice on its own" and "[m]ust take judicial notice if a party requests it and the court is supplied with the necessary information." Iowa R. Evid. 5.201(c).

ed. 2009)). These can include facts such as census figures, farm foreclosures, state boundaries, the health hazards created by unsanitary home conditions, or prior court orders. *See In re H.G.*, 534 N.W.2d 113, 114 (Iowa Ct. App. 1995) (collecting cases). There is no limitation found in Iowa case law on taking judicial notice from a private entity, even if it is not the most common option—judicial notice can be taken of an adjudicative fact that "[c]an be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Iowa R. Evid. 5.201(b)(2).

In this case, even if we did take judicial notice that some projects might be approved in July 2022, we again sit at the junction of having no project *actually* approved. Thus, we are at the same place as the district court found itself. If projects ultimately are approved, the district court should get first dibs on analyzing the impact of those facts under the law. *See Washington*, 832 N.W.2d at 656 ("[No] appellate court should ever take judicial notice of any facts that might control constitutional adjudication without informing all counsel and sending the case back to the trial court to give counsel an opportunity to show the erroneous or irrelevant nature of the facts judicially noticed." (alteration in original) (quoting *City of Council Bluffs v. Cain*, 342 N.W.2d 810, 813–14 (Iowa 1983))). With this caution in mind, given the constitutional questions this case presents, we decline to take judicial notice of proposed projects and instead contain our review to what was presented to the district court.

With our determinative facts established, we turn to whether LSP has standing.

*b. Traditional Standing.*

Standing is a rule of judicial restraint; courts are cautious to resolve cases unless they are brought by the proper party. *See Godfrey v. State*, 752 N.W.2d 413, 417–18 (Iowa 2008); *cf. Iowa Citizens for Cmty. Improvement v. State*, 962 N.W.2d 780, 790 (Iowa 2021) (noting "the standing requirement [is no] less real" for being a self-imposed rule). A determination that a party has standing must occur before we consider the merits of the claim. *Horsfield Materials, Inc. v. City of Dyersville*, 834 N.W.2d 444, 452 (Iowa 2013). "Even if the claim could be meritorious, the court will not hear the claim if the party bringing it lacks standing." *Alons v. Iowa Dist. Ct.*, 698 N.W.2d 858, 864 (Iowa 2005). Standing must be shown to the same level of proof as any other element at the motion to dismiss stage. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("Since [standing is] not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (second alteration in original) (citations omitted)).

Broadly speaking, in Iowa standing is determined by a two-prong test: to be properly situated to bring a claim, a party "must (1) have a specific personal or legal interest in the litigation and (2) be injuriously affected." *Godfrey*, 752 N.W.2d at 418 (citation omitted). The first prong "require[s] the litigant to allege some type

of injury different from the population in general." *Id.* at 420. The second, injury-in-fact prong "reflects the statutory requirement that a person be 'adversely affected' or 'aggrieved'" and "serves to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem." *Rush v. Reynolds*, No. 19-1109, 2020 WL 825953, at *4 (Iowa Ct. App. Feb 19, 2020) (quoting *United States v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669, 689 n.14 (1973)). This prong confers standing if the injury is concrete and actual or imminent—not conjectural or hypothetical. *Hawkeye Foodservice Distrib., Inc.*, 812 N.W.2d at 606. While loss of competitive interest can fulfill this injury requirement, "[a]n injury is more likely to be imminent, and therefore sufficient to support standing, if the plaintiff alleges that it has 'actually lost business in the past as a result of' improper governmental action." *Id.* (citation omitted).

The district court looked at LSP's alleged injuries and found that, as a non-incumbent energy company subject to the new ROFR, LSP met the first prong requiring them to have a particular interest. However, the court concluded LSP had not shown an injurious effect because they could not point to a specific project they had been denied as a result of section 478.16 or that was planned for the future; thus, the allegations of a loss of economic advantage and harm to LSP's competitive interests were only "speculative, hypothetical, and anticipatory." As to LSP's claims that it was injured because it was not allowed to participate in the legislative process and develop an opposition to the bill, the district court

determined these were generalized grievances and so did not establish standing.[9] *See Godfrey*, 752 N.W.2d at 413; *Rush*, 2020 WL 825953, at *5.

LSP is correct that companies have established standing in the past without pointing to a specific project they were denied or prevented from bidding on; however, they have done so by showing their own harm is likely because their competitors have been harmed already. *See Iowa Bankers Ass'n v. Iowa Credit Union Dep't*, 335 N.W.2d 439, 444–45 (Iowa 1983) (applying a statutory requirement on standing in agency actions). In *Iowa Bankers Association*, it was unrebutted that banks were actively losing business because newly promulgated rules involving credit unions were harming the banks' competitive interests. *Id.* One difference between *Iowa Bankers Association* and this case, though, is the established harm already caused by the rules the party was challenging in the former case. *See id.*; *Godfrey*, 752 N.W.2d at 423 ("The likelihood of injury [in *Iowa Bankers Association*] was demonstrated by allegations that some banks had actually lost business in the past *as a result of the agency rules*." (emphasis added)); *accord Hawkeye Foodservice Distrib., Inc.*, 812 N.W.2d at 606–07 (allowing a wholesale food and service provider to sue when the improper actions of Area Education Agencies gave its competitor a competitive advantage that cost it business); *Horsfield Materials, Inc.*, 834 N.W.2d at 457 (finding standing for a contractor excluded from a preapproved list, which gave the list members a competitive advantage).

---

[9] At oral argument, LSP acknowledged it was not challenging the district court's decision that the alleged injuries based on their inability to participate in the legislative process or marshal public opposition to the bill were too general, so we address neither.

We see a similar approach in other cases when standing has been discussed for companies that bid on projects. In *Hawkeye Foodservice Distribution, Inc.*, a wholesale distributor of food and services for Iowa schools sued when a number of Area Education Agencies awarded its competitor a prime vendor contract that diverted business away from Hawkeye. 812 N.W.2d at 606–07. Because Hawkeye alleged it was actively losing business based on the Agencies' illegal behavior, it had standing to sue. *Id.* In *Horsfield Materials, Inc.*, a supplier for public contracts was not included on a list of preapproved vendors created by the city. 834 N.W.2d at 457. Horsfield could not show an injury from a specific project because of this exclusion, but it could point to projects it was not allowed to bid on because of the complete exclusion of Horsfield. Neither of these cases reflects the facts of this case where no project has yet been lost or barricaded away from LSP. Here, there have been no projects approved or assigned since the enactment of section 478.16; just as LSP cannot show they have yet suffered an injury because they have not yet lost a project in Iowa, neither can they point to any loss experienced by any competitor.

Invoking other jurisdictions' ROFRs, LSP points to projects they have missed out on outside of Iowa. These alleged injuries may be similar or analogous to an injury LSP anticipates suffering in Iowa,[10] but they were not caused by the statute LSP currently challenges. Our supreme court has found prior loss of

---

[10] LSP directs us to *LSP Transmission Holdings, LLC v. Sieben*, 954 F.3d 1018, 1025 (8th Cir. 2020) as evidence of past loss of business. We note both that this case involves another company utilizing their ROFR to take on a project and that the case is about a Minnesota statute, not the statute at play in this case. The party also mentions that it should not have to show harms suffered here in Iowa; but it is limited by the jurisdictional reach of the law in question.

business important when considering the likelihood of an imminent injury and, ultimately, whether a party has standing, but the facts here do not establish such a loss. *See Godfrey*, 752 N.W.2d at 423. Before the district court, there were no pending projects to be bid, no company had been excluded from projects, and as far as we know, LSP could be granted a future Iowa project. In other words, no race has been set and the race starter has not yet, or even in the past, limited any runner from approaching the starting line. So, LSP cannot show an imminent injury or a likelihood of injury at this preliminary stage. *See Godfrey,* 752 N.W.2d at 423 (concluding a plaintiff lacked "any immediacy to support standing" because there was "nothing to show that the future injury is not merely theoretical").

LSP notes that, if we are to conclude they do not have standing, we will extinguish their ability to bring an article III, section 29 challenge because such challenges can only be brought before a law is codified. *See State v. Mabry*, 460 N.W.2d 472, 475 (Iowa 1990) (adopting the rule that "codification of the challenged legislation cures a constitutional defect in title or subject matter"). Our supreme court has addressed this argument over timing already. *See id.* ("[A]n article III, section 29 challenge is barred even though future litigants may claim they were in no position to make such a challenge before the codification."); *State v. Kolbet*, 638 N.W.2d 653, 661 (Iowa 2001) ("We recognize that this limitation means that the window of opportunity for challenging a statute on this ground is entirely fortuitous because persons are not motivated to challenge a statute until they are placed in a position in which the statute adversely affects them. Nevertheless, this is an inescapable conclusion of the *Mabry* doctrine."). LSP cannot point us to any case law indicating standing can be bypassed simply for the sake of allowing a

single-subject claim to progress, nor do we find any on our own review. Even if it means LSP will miss the window to challenge H.F. 2643 under single-subject grounds, we cannot ignore that LSP lacks traditional standing.[11]

Because of the procedural posture of this case, we consider the record "in the light most favorable to the resisting party, affording that party all reasonable inferences that the record will bear." *Smith v. Shagnasty's Inc.*, 688 N.W.2d 67, 71 (Iowa 2004) (citation omitted). Even with these presumptions, as a matter of law, the facts LSP has pled cannot establish a legal harm that would provide them standing today. This is a case beleaguered by timing—LSP swung before the pitch and cannot satisfy the injury-in-fact prong of our standing test. And as the defendants so note, LSP still has a right after a denial of a bid to raise some of their complaints before a district court.[12] We affirm the district court's determination that LSP lacks standing to challenge the law.

*c. Public Importance Exception.*

LSP argues that, even if we conclude they lack traditional standing, they should be allowed to continue with their claims under the public importance exception to the standing doctrine. *See Godfrey*, 752 N.W.2d at 425 ("We believe our doctrine of standing in Iowa is not so rigid that an exception to the injury

---

[11] As LSP conceded at oral argument, standing is measured at the time of filing the petition. *See Klein v. Iowa Pub. Info. Bd.*, 968 N.W.2d 220, 234 n.9 (Iowa 2021) (describing standing as "[t]he requisite personal interest that must exist at the commencement of the litigation"); *see also Brunkhorst v. Iowa Pub. Emps.' Ret. Sys.*, No. 13-0606, 2014 WL 1714457, at *7 n.3 (Iowa Ct. App. Apr. 30, 2014) (speculating our supreme court would officially adopt language to this effect).

[12] Even if LSP is prevented from challenging the legislation for violating article III, section 29 of the Iowa Constitution, they are not foreclosed from raising their claims regarding equal protection and privileges and immunities.

requirement could not be recognized for citizens who seek to resolve certain questions of great public importance and interest in our system of government. . . . Thus, an exception to standing that conforms to the underlying rationale for the doctrine should be recognized."). This exception is one Iowa courts do not take lightly.

> While standing generally limits the exercise of our powers except as to matters that are "strictly judicial in nature," we become especially hesitant to act when asked to resolve disputes that require us to decide whether an act taken by one of the other branches of government was unconstitutional. Without an individual injury by the complainant under such circumstances, we risk assuming "a position of authority" over the acts of another branch of government. We must avoid such a result. Thus, standing should be waived only when the issue is of utmost importance and the constitutional protections are most needed.

*Id.* at 427 (citations omitted). In part because of this high threshold, "no Iowa appellate case has ever waived traditional standing requirements because of an issue of great public importance." *Rush*, 2020 WL 825953, at *13 ("When faced with issues that are heavy-laden with politics in which a plaintiff satisfies traditional standing requirements, our duty is to exercise our jurisdiction and decide the issues appropriate for adjudication. But when plaintiffs do not have standing, we should consider whether to avoid becoming embroiled in a case by exercising a waiver of standing requirements to reach an issue that might be better left to the political environment."). Determining whether such an exception should apply is a fact-intensive inquiry focused on evaluating how the challenged injury to the public might be advanced by the plaintiff in a "representative capacity" to allow for the greater good. *Id.*

This case is unique in our public importance jurisprudence. In *Godfrey* and *Rush*, there was no finding of logrolling. *See Godfrey*, 752 N.W.2d at 426 (offering no allegation); *Rush*, 2020 WL 825953, at *12 (offering only facts that could not support a finding of logrolling). Logrolling is the "'practice of procuring diverse and unrelated matters to be passed as one "omnibus"' due to 'the consolidated votes of the advocates of each separate measure, when no single measure could have been passed on its own merits.'" *Godfrey*, 752 N.W.2d at 426 (citation omitted); *see also Planned Parenthood of the Heartland, Inc. v. Reynolds*, ___ N.W.2d ___, ___, 2022 WL 2182983, at *12 (Iowa 2022) ("'Logrolling also occurs when several matters, none of which individually has majority support, are joined in one bill and passage procured by combining the minority in favor of each into a majority willing to enact them all.' . . . The single-subject requirement is primarily aimed at . . . avoiding logrolling." (internal citation omitted)). Additionally, *Godfrey* and *Rush* involved more limited challenges—*Godfrey*, 752 N.W.2d at 427, had only a single-subject challenge and *Rush*, 2020 WL 825953, at *8, made both a single-subject and a title challenge. LSP makes allegations of logrolling as well as challenges under the single-subject, title, privileges and immunities, and equal protection clauses of the Iowa Constitution. "While we strive to protect people from all constitutional violations, we do not respond to all violations the same, or even provide a remedy for every violation." *Godfrey*, 752 N.W.2d at 428. And the core of what is at issue is LSP's competitive interests; while they press there could be public implications to this law, they have not shown a level of public importance necessary for the inaugural invocation of this narrow public importance exception. *See id.* ("This conclusion, of course, is not a statement on the merits of the claim,

but our determination that the particular claim presented by a litigant without standing is not important enough to require judicial intervention into the internal affairs of the legislative branch of government."). Keeping the policies of standing in mind, particularly the "need to ensure 'that a real, concrete case exists to enable the court to feel, sense, and *properly weigh the actual consequences of its decision*,'" we decline to exempt LSP from our traditional standing requirements. *See Rush*, 2020 WL 825953, at *14 (emphasis added) (citation omitted).

      *d. Injunction.*

      The final end to tie up is LSP's motion for a temporary injunction. "A temporary injunction is a preventive remedy to maintain the status quo of the parties prior to final judgment and to protect the subject of the litigation." *Lewis Invs., Inc. v. City of Iowa City*, 703 N.W.2d 180, 184 (Iowa 2005) (citation omitted). But, before granting a temporary injunction, a court must find the requesting party is likely to succeed on the merits of the underlying claim. *Id.* LSP cannot succeed in this litigation without standing, and so we deny their request for a temporary injunction.

## III. Conclusion.

      As LSP lacks standing to bring this case, we affirm the district court's dismissal of the case and deny LSP's request for a temporary injunction.

      **AFFIRMED.**